UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS E. TYNDALL, : | |
|     Plaintiff, : | |
| : | |
| v. : | No. 3:03 CV 194 (CFD) |
| : | |
| NEW ENGLAND TEAMSTERS & : | |
| TRUCKING INDUSTRY PENSION : | |
| FUND, ET AL., : | |
|     Defendants. : | |

### RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT

The plaintiff, Thomas E. Tyndall ("Tyndall") brought this action pro se against the New England Teamsters and Trucking Industry Pension Fund ("Pension Fund"), David W. Laughton, Paul V. Walsh, Anthony S. Buonpane, George W. Cashman, J. Leo Barry, John J. McCarthy, Jr., William M. Vaughn III, and J. Dawson Cunningham (collectively, the "Trustees") alleging that the Trustees of the Pension Fund have miscalculated and wrongfully withheld payment of Tydall's pension benefits, which are regulated by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq..[1] Count One alleges that the Trustees wrongfully reduced Tyndall's monthly benefit rate from $284 to $218. Count Two alleges that the Trustees wrongfully withheld interest on a lump sum award of retroactive benefits. The defendants have filed a motion for summary judgment as to Count One [Doc. #13].

---

[1] The complaint was originally filed in state court, but was properly removed by the defendants pursuant to 28 U.S.C. §§ 1441(a), (b) and 28 U.S.C. § 1446. This Court has jurisdiction under 29 U.S.C. § 1132(e).

1

I.     Facts[2]

Tyndall is a participant in the New England Teamsters and Trucking Industry Pension Plan ("Pension Plan"). In May 1990, Tyndall filed an application for a pension with an intended retirement date of July 1, 1990. In a letter dated July 12, 1990, the Pension Fund informed him that his application had been denied. On October 27, 1994, Tyndall filed an appeal with the Pension Fund. In January 1995, the Trustees reviewed Tyndall's appeal and acknowledged that Tyndall was eligible for a pension when he first applied in 1990.[3] The Trustees reversed their earlier decision and voted to award Tyndall a pension benefit. Tyndall's effective retirement date was set as February 1, 1995 and his monthly pension benefit was approximately $287 per month.

Under the Pension Plan, the "Normal Retirement Age" is 64 years old. The Pension Fund's policy is to increase the pension benefit of a participant who retires after the Normal Retirement Age. As Tyndall was 67 years old at the time of his effective retirement date of February 1, 1995, he was eligible to receive an actuarial increase for retiring later than the Normal Retirement Age. The actuarial increase for late retirement is calculated as a 10.5% increase for each year over the Normal Retirement Age. Accordingly, Tyndall received an actuarial increase of 31.5% of his monthly benefit. Tyndall's monthly benefit without the actuarial increase was $256.25 per month. The actuarial increase equated to an extra $80.72 per month, for a total pension of $337 per month. The $337 was reduced by 15% for the husband and wife provision which Tyndall had elected, totaling $287 per month effective February 1,

---

[2] The following facts are taken from the parties' Local Rule 56 Statements and related documents. They are undisputed except where indicated.

[3] The issue concerned whether there had been a "break in service" by Tyndall.

1995, and then $284 per month beginning October 1, 1995.

In a letter dated March 30, 2001, Tyndall filed an appeal with the Pension Fund regarding back payments.[4]  In August 2001, the Trustees decided Tyndall's appeal and voted that he could change his effective retirement date from February 1, 1995 to August 1, 1990.

On August 24, 2001, Fund Manager Charles Langone ("Langone") sent Tyndall a letter informing him that the Pension Fund had completed its calculation of his benefit and that if Tyndall chose to accept the earlier effective date of August 1, 1990, he would receive $6,392 in a lump sum payment for retroactive benefits, plus a payment of $2,400 in Christmas checks.  In addition, Langone informed Tyndall that, if he chose that option, his monthly benefit would be reduced from $284 to $218 per month due to the elimination of the actuarial increase that had been added to his pension when his effective date had been February 1, 1995.  Langone explained that the actuarial increase was no longer applicable because the new earlier effective retirement date would be prior to Tyndall's attainment of the Normal Retirement Age of 64.[5]  Tyndall was offered a choice: (1) elect to change his benefit commencement date to August 1, 1990, receive a total retroactive payment of $8,792, and receive a monthly benefit of $216 starting September 1, 2001; or (2) elect not to change his benefit commencement date, not receive the retroactive payment, and continue receiving a monthly benefit of $284.[6]

On September 18, 2001, Tyndall completed the form attached to Langone's letter and

---

[4]The parties dispute whether Tyndall requested that his effective retirement date be retroactively changed from February 1995 to August 1990.

[5]Tyndall would have been 62 in August 1990.

[6]In a letter dated September 5, 2001, Langone clarified that under the first option, Tyndall's new monthly benefit would be $218, not $216.

3

selected the first option. On October 4, 2001, Langone sent Tyndall a letter enclosing a check in the amount of $6,402 for the adjustment of his benefits for the months of August 1990 through October 2001, as well as a check in the amount of $2,400 representing the adjustment to his Christmas benefit. The monthly benefit was also adjusted to $218 per month.

On December 7, 2001, Tyndall filed an appeal with the Pension Fund, requesting that his monthly benefit be reinstated to $284 per month. In March 2002, the Trustees heard Tyndall's appeal and voted not to increase Tyndall's monthly benefit. This action followed.

## II.    Summary Judgment Standard

In the context of a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Miner v. Glens Falls, 999 F.2d 655, 661 (2d Cir. 1993) (internal quotation marks and citation omitted). In ruling on a motion for summary judgment, however, the Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991), cert. denied, 502 U.S. 849 (1991); see also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992). In addition, because Tyndall is proceeding pro se, the Court will read his pleadings "liberally and interpret them to raise the

strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (citation and internal quotation marks omitted).[7]

### III.    Discussion

Tyndall alleges that the Pension Fund wrongfully reduced his monthly pension benefit in violation of a provision in the Fund's Rules and Regulations which states that "[t]he Plan may be amended at any time by the trustees, consistent with the provisions of the Trust Agreement. However, no amendment may decrease the accrued benefit of any Participant ...." The defendants contend that there was no amendment or modification of the Plan, that Tyndall is not eligible to receive the increased monthly benefit he seeks, and that the Trustees' actions were not arbitrary or capricious.

#### A.    Standard of Review

Under ERISA, a pension plan participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A denial of benefits challenged under this provision is reviewed *de novo* unless the pension plan gives the fiduciary or plan administrator discretion to determine eligibility for benefits. Firestone Tire &

---

[7]Tyndall's responses to the partial summary judgment motion indicate that he understands "the nature and consequences of summary judgment and the need to set forth all available evidence demonstrating a genuine dispute over material facts." Sawyer v. Am. Fed'n of Gov't Employees, 180 F.3d 31, 34-35 (2d Cir. 1999) (internal quotation marks omitted). Tyndall has filed a Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment [Doc. #17], Local Rule 56a(2) Statement [Doc. #18], an Affidavit [Doc. #19], and a Response to Defendants' Reply Memorandum in Support of its Motion for Partial Summary Judgment [Doc. #21]. The arguments contained in Tyndall's submissions demonstrate that he understands the nature and consequences of the motion for partial summary judgment and his burden to produce evidence opposing the motion.

Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  "[W]here the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'"  Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995) (citations omitted).  It is the administrator's burden to show that this deferential review applies.  Kirk v. Readers Digest Ass'n, Inc., 57 Fed. Appx. 20, 23 (2d Cir. 2003).

The Pension Fund was initially established pursuant to an Agreement and Declaration of Trust dated April 11, 1958, which has been restated as of January 26, 1994 (the "Trust Agreement").  The Pension Plan and the Trust Agreement in effect at the relevant times for this action[8] undoubtedly conferred discretionary authority to the Trustees so as to trigger the "arbitrary and capricious" standard as to certain matters.  For example, the Trust Agreement confers upon the Trustees discretionary authority to determine eligibility for benefits.  Article VI, Section 3 of the Trust Agreement provides that "the Trustees shall have full discretionary authority to determine and interpret eligibility requirements for benefits and to adopt rules and regulations setting forth same which shall be binding on the employees and their beneficiaries and dependents."  In addition, Article VI, Section 4 provides that "[t]he benefits shall be provided and maintained by such means as the Trustees shall in their sole discretion determine."  Moreover, Article VIII, Section 8.03 of the Pension Plan states that "[t]he Trustees shall be the judges of the standard of proof required in any case and of the application and interpretation of this Plan, and the decisions of the Trustees shall be final and binding on all parties, subject to

---

[8]Pension Plan rules and regulations effective October 1, 1976, as amended through October 30, 1985; Trust Agreement dated January 26, 1994.

appeal under Section 8.04." Here, the discretion exercised by the Trustees included the determination of the methods for making Tyndall whole following their 1995 decision sustaining Tyndall's appeal of the 1990 denial of benefits. Accordingly, the Court will review the Trustees' actions in this case under an "arbitrary or capricious" standard.

B.    **Arbitrary or Capricious**

Under an "arbitrary or capricious" standard, courts may "overturn a decision to deny benefits only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." Pagan, 52 F.3d at 442 (citations and quotation marks omitted). District courts are required to consider whether the Trustees' decision was "based on a consideration of the relevant factors and whether there has been a clear error of judgment," but may not "upset a reasonable interpretation" by the Trustees. Zuckerbrod v. Phoenix Mut. Life Ins. Co., 78 F.3d 46, 49 (2d Cir. 1996) (citation and quotation marks omitted).

In October 2001, the Trustees changed Tyndall's effective retirement date from February 1, 1995 to August 1, 1990. Tyndall received a lump sum retroactive payment to reflect those years between 1990 and 1995 that he should have been earning a pension but for the Trustees' initial denial of his pension application. In connection with this change, Tyndall's monthly benefit amount decreased from $284 to $218.

The Trustees explain that the reduction in monthly benefits is due to the fact that Tyndall was no longer entitled to receive the same monthly benefit he had been receiving when his effective retirement date was February 1, 1995. Tyndall had received an extra $80.72 per month, a 31.5% actuarial increase, because he was 3 years older than the Normal Retirement Age at the time of his original retirement in February 1995. Once Tyndall's effective retirement date was

changed to August 1, 1990, Tyndall's retirement age was 62, not 67. Thus, he was not older than the Normal Retirement Age and not eligible to receive an actuarial increase for a late retirement.

The Trustees' calculation of Tyndall's pension benefits was based on an effective retirement date of August 1, 1990 when Tyndall would have been 62 and not entitled to the same actuarial increase he had been entitled to with an effective retirement date of February 1, 1995. The Trustees' decision to not continue Tyndall's monthly pension benefit at $284, and instead to reduce Tyndall's monthly payment to $218 and also provide the lump sum amount, was neither arbitrary nor capricious. The Trustees considered the relevant factors and followed the Plan provisions and Pension Fund policy regarding actuarial increases for those whose pensions commence after Normal Retirement Age.

C.    **Amendment of the Plan**

Tyndall also alleges that the reduction in his monthly pension benefit violated Pension Plan rules and regulations stating that once a benefit rate has been established and approved, it may not be reduced by amendment so long as sufficient funds remain available for its payment.[9] Section 204(g) of ERISA also provides that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) or 1441 of this title." 29 U.S.C. § 1054(g). However, Tyndall contends that

---

[9]Tyndall appears to rely on Article X, Sections 1 and 2 of the Pension Plan rules and regulations effective July 28, 1967, see Tyndall's letter to Trustees dated December 7, 2001. The Court has only been provided with a copy of the Pension Plan rules and regulations effective October 1, 1976, as amended through October 30, 1985, but it is undisputed that those were in effect during the events here. The 1985 Pension Plan rules and regulations state that the Plan "may be amended at any time by the Trustees . . . . However, no amendment may decrease the accrued benefit of any Participant . . . ." Article XI, Section 11.01 of the 1985 Pension Plan rules and regulations.

he has not alleged a violation of § 204(g) of ERISA.

Even assuming that Tyndall had alleged a violation of § 204(g), in addition to a violation of the Plan, Tyndall does not allege any "amendment" to the Plan. Section 204(g) is triggered only by an amendment to a pension plan, not by a re-calculation of an individual's monthly pension benefit. Similarly, because Tyndall does not allege any "amendment," Article XI, Section 11.01 of the Pension Plan rules and regulations is not violated. The Trustees' reduction of Tyndall's monthly pension benefit did not alter, modify or change the Plan. The Trustees have the discretionary authority to determine Tyndall's eligibility for pension benefits, and that is what occurred here. Article IV, Section 3 of the Trust Agreement provides:

> The Trustees are hereby empowered . . . (j) To reconcile, determine, interpret and construe, with discretionary authority, any question or dispute arising in connection with definitions of terms, rights, status or classification of employees, or any other dispute or claim arising under the Plan, including, but not limited to, the determination of the entitlement of any person to any pension or retirement benefits, or the existence, extent, cause and continuance of any person's claims to any disability or other benefits.

In addition, Article VI, Section 3 of the Trust Agreement states that "[t]he Trustees shall have full discretionary authority to determine and interpret eligibility requirements for benefits . . . ." Similarly, Article VIII, Section 8.03 of the Pension Plan states that "[t]he Trustees shall be the judges of . . . the application and interpretation of this Plan, and the decisions of the Trustees shall be final and binding on all parties, subject to appeal under Section 8.04." Thus, the Trust Agreement and Pension Plan confer upon the Trustees the power to apply and interpret the Plan. In changing Tyndall's effective retirement date and re-calculating his monthly pension benefit, the Trustees were acting in accordance with the express provisions in the Trust Agreement and Pension Plan. Since the Trustees were acting pursuant to their authority in these express

9

provisions, no Plan amendment occurred. See Krumme v. Westpoint Stevens Inc., 143 F.3d 71, 84-86 (2d Cir. 1998) (holding that pension plan committee did not "amend" the pension plan when committee acted under its express authority under the pension plan documents); Tourangeau v. Uniroyal, Inc., 189 F.R.D. 42, 46-47 (D. Conn. 1999) (finding no pension plan "amendment" where plan administrators acted in accordance with an existing plan provision). See also Dooley v. American Airlines, 797 F.2d 1447, 1452 (7th Cir. 1986) (stating that "we are unwilling to contort the plain meaning of 'amendment' so that it includes the valid exercise of a provision which was already firmly ensconced in the pension document."); Stewart v. Nat'l Shopmen Pension Fund, 730 F.2d 1552, 1561 (D.C. Cir. 1984) (finding no pension plan "amendment" when "a provision already incorporated into the plan, was *applied*."); Straus v. Prudential Employee Savings Plan, 253 F. Supp. 2d 438, 450 (E.D.N.Y. 2003) (concluding that no amendment occurred where "the Administrative Committee validly exercised the discretion afforded to it under the terms of the Plan."); Whitaker v. Texaco, 729 F. Supp. 845, 851 (N.D. Ga. 1989) (stating that "[i]f the *provision itself* gives the fiduciary discretion, then exercising that discretion is obviously not an amendment of a provision, it is simply the exercise of a provision."). The change in Tyndall's effective retirement date, together with the reduction in Tyndall's monthly pension benefit and the payment of the lump sum amount, was a valid exercise of the Trustees' power under the terms of the Trust Agreement and the Pension Plan. No Plan amendment occurred here.

**IV.     Conclusion**

Accordingly, Defendants' Motion for Partial Summary Judgment [Doc. #13] is GRANTED.  Only Count Two remains.

**SO ORDERED** this 29th day of April 2004, at Hartford, Connecticut.

/s/ CFD
**CHRISTOPHER F. DRONEY
UNITED STATES DISTRICT JUDGE**