UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS E. TYNDALL, | ) |
|        Plaintiff, | ) |
| v. | ) |
| NEW ENGLAND TEAMSTERS & TRUCKING INDUSTRY PENSION FUND, DAVID W. LAUGHTON, PAUL V. WALSH, ANTHONY S. BUONPANE, GEORGE W. CASHMAN, J. LEO BARRY, JOHN J. MCCARTHY, JR., WILLIAM M. VAUGHN III, and J. DAWSON CUNNINGHAM, | ) Case No. 3:03cv194(CFD) |
|        Defendants. | ) |

### LOCAL RULE 56(a)1 STATEMENT OF FACTS

Pursuant to Local Rule 56(a)1 of the Local Civil Rules of the United States District Court for the District of Connecticut, some of the following are material facts as to which there is a genuine issue to be tried.

1. Agreed

2. Agreed

3. Agreed

4. Agreed In Part

   Contributions are paid to the Fund at an hourly rate determined by collective bargaining agreements, as defined by Article I, Section 1.07 of the 1985 Rules and Regulations of the Pension Plan, as well as by Section 1.07 of the 1994 Plan, and Section 1.08 of the 2003 Plan, between contributing employers and local teamster unions participating in the Fund. Contributions are paid on behalf of employees for each hour of employment

1

"covered" by these collective bargaining agreement. (Langone Affidavit ¶5; Exhibits 3, 4)

ANSWER: Defendants only mention plans starting with the 1985 Plan but there were many previous plans dating from April 11, 1958 through today. Plaintiff is aware of Plans dated 1958-1963-1967-1971-1974-1979-1985.

5. Agreed In Part

Contributing employers to the Fund are defined by Article I, Section 1.06 of the 1985 Plan, Section 1.08 of the 1994 Plan, and Section 1.09 of the 2003 Plan. (Langone Affidavit ¶6; Exhibits 2, 3, 4)

ANSWER: Again, there were many previous plans. See Answer 4 above.

6. Agreed In Part

Participating Local Unions are defined as those unions that have been accepted for participation by the Fund Trustees and have accepted the Trust Agreement in writing pursuant to Article I, Section 1.05 of the 1985 Rules and Regulations of the Pension Plan, Section 1.19 of the 1994 Plan, and Section 1.22 of the 2003 Plan. (Langone Affidavit ¶7; Exhibits 2, 3, 4)

ANSWER: Why are the Defendants relying on only 3 Pension Plans while there were many more? Are they trying to set something up?

7. Agreed

8. Disagree In Part

2

In May 1990, Thomas Tyndall filed an application with the Fund for a pension with an intended retirement date of July 1, 1990. (Langone Affidavit ¶10; Exhibit 5)

ANSWER: Thomas Tyndall attempted to file an application the first time for Pension in 1980, as he was then 52 years old and the pension rules allowed for him to apply for early pension. He received a letter of rejection dated June 23, 1980 which stated, and I quote, "Cancels all credited service prior to 1971." Copy of this letter attached to these Statement of Facts.

9. Agreed

10. Disagree In Part

In a letter dated July 12, 1990, the Fund informed Mr. Tyndall that his application for a pension had been denied based upon a break in service. (Langone Affidavit ¶12; Exhibit 6)

ANSWER: The letter sent by the Fund to Thomas Tyndall was obviously predicated on false information, same as the letter mentioned in Item 8, above. Copy of this letter also enclosed.

11. Disagree In Part

The Fund informed Mr. Tyndall that his seventeen years and one month of pension credit had been cancelled because he failed, starting in 1971, to earn at least eight months of pension credit in any of six consecutive calendar years, and because by 1980, when he reached age 52, he had been out of covered employment for more than nine years. (Langone Affidavit ¶13; Exhibit 6). While the Fund was incorrect that Mr. Tyndall had

3

had a break in service, Mr. Tyndall was not entitled to a pension in 1990 because he did not meet the plan's requirements for a pension. (Langone Affidavit ¶13)

ANSWER: The Fund informed Mr. Tyndall that all of his Pension credits were cancelled and was signed by the Pension Fund Manager, who, the Pension Fund Manager should have known that when an applicant had over 15 years credits he was fully vested and should have advised the applicant about the 6 months after age 49. This advisement is mandatory by both the Pension Plan rules and the ERISA Law. Page 32, 1979 Plan, Top Right Paragraph (highlighted) and the ERISA Law Section 503(1), Page 65 Public Law 93-406.

12. Agreed

13. Agreed

14. Agreed

15. Disagree

Tyndall did not have six months of service after age 49 as of 1990, he did not work in covered employment after 1977, when he was 49 years old, and he was not disabled in August 1990. (Langone Affidavit ¶17)

ANSWER: Tyndall was not advised in any of the rejection letters about the 6 months after age 49 portion of the Pension Plan – this is a violation of the Pension Plan and also the ERISA Law. Also, again Mr. Langone is giving the Court misinformation when he states Mr. Tyndall was not disabled in August, 1990. Mr. Tyndall was disabled during

4

his service in the U.S. Army during World War II. How Mr. Langone arrived at that misconception Mr. Tyndall does not know – probably shooting from the hip.

16. Agreed

17. Agreed

18. Agreed

19. Agreed

20. Agreed

21. Agreed

22. Agreed

23. Agreed

24. Agreed

25. Agreed In Part

In a letter dated April 6, 1995, written in response to inquiries from Mr. Tyndall, Fund Manager Langone explained to Mr. Tyndall how his pension had been calculated by adding the actuarial increase of $80.72, and then reducing the monthly pension amount by 15% based upon his selection of the 50% husband and wife plan. (Langone Affidavit ¶27; Exhibit 13)

ANSWER: Had the Pension Fund correctly computed Mr. Tyndall's Pension and paid the Pension based upon the proper application date, there would be no need of all this application to the Court system to solve this problem.

26. Disagree

On March 30, 2001, Mr. Tyndall filed an appeal with the Fund requesting that his effective date be retroactively changed from February 1995 to August 1990, and also requesting that he receive past service credit for his employment with Trudon & Platt Motor Lines. (Langone Affidavit ¶28; Exhibit 14)

ANSWER: Nowhere in the letter of March 30, 2001 did Mr. Tyndall request a change of effective date. What Mr. Tyndall pointed out that he was due benefits from his application in 1990 thru January 1995. This amount was in excess of $11,000.00. Copy of this letter included.

27. Agreed

28. Agreed

29. Agreed

30. Disagree

On or about August 24, 2001, Mr. Langone sent Mr. Tyndall a letter informing him that the Fund had completed its calculation of his benefit and that if he chose to accept the earlier effective date of August 1, 1990, he would receive $6392.00 in a lump sum payment for retroactive benefits, plus a payment of $2400.00 in Christmas checks. In addition, Mr. Langone informed Mr. Tyndall that his monthly benefit would be reduced from $284.00 to $218.00 per month due to the elimination of the actuarial increase that had been added to his pension when his effective date had been February 1, 1995. Mr. Langone also notified Mr. Tyndall that the actuarial increase was no longer applicable because the new earlier effective retirement date would be prior to his attainment of the

6

Normal Retirement Age of 64. There was no promise, nor even any mention, of interest being paid. (Langone Affidavit ¶32; Exhibit 17).

ANSWER: Defendants completed their calculations and came up with the wrong figures. (Total)

31. Disagree

Mr. Langone attached to his August 24, 2001 letter to Mr. Tyndall a separate form which offered him the opportunity to select one of the two following options:

- I elect to change my benefit commencement date to August 1, 1990. I understand that I will receive a total retroactive payment of $8,792 and that my monthly benefit amount will be $216 starting September 1, 2001.

- I elect not to change my benefit commencement date to August 1, 1990. I understand that my benefit commencement date will remain February 1, 1995 and that I will not receive a retroactive payment of $8,792. My monthly benefit amount will continue to be $284. (Langone Affidavit ¶33; Exhibit 17)

ANSWER: Langone put Tyndall between a rock and a hard place. Tyndall chose under duress. Again, the total is wrong. Correct total is $8,802.00.

32. Agreed

33. Disagree

On or about September 18, 2001, Mr. Tyndall elected to change his benefit commencement date to August 1, 1990 and receive a retroactive lump sum payment, including Christmas checks, of $8,934.00 by completing the form attached to Mr. Langone's August 24, 2001 letter. (Langone Affidavit ¶35; Exhibit 19)

ANSWER: Again under duress. Defendants should check their figures. Figures never lie but liars can figure. Mr. Tyndall received $8,802.00. Copy of checks included.

34. Agreed

35. Agreed

36. Agreed

37. Agreed

38. Agreed

39. Agreed

40. Disagree

There is no provision in the 2003 Plan, or any preceding Plan, that provides for the payment of interest on retroactive benefits. (Langone Affidavit ¶42; Exhibits 2, 3, 4)

ANSWER: The 1985 Plan page 50, Section 802 calls for interest to be paid in the event that false information pertaining to a pension application is made. This false information was put forth by the Pension Plan Administrators.

41. Disagree

At the May 2002 Trustees' meeting, the Trustees voted to deny Mr. Tyndall's request for interest on the lump sum amount. (Langone Affidavit ¶43; Exhibit 26). Mr. Langone advised Mr. Tyndall of his decision in a letter dated May 23, 2002. Mr. Langone stated in the letter that there was no provision in the Plan that would allow an award of interest on the lump sum payment Mr. Tyndall received as a result of his election of the earlier retirement date of August 1990. (Langone Affidavit ¶43; Exhibits 26,27)

ANSWER: As previously mention in 40A, Article VIII, Section 802 Information and proof.

42. Agreed

43. Agreed

44. Agreed with Reservations

On December 3, 2004, the parties attended a mediation session before Hon. Thomas P. Smith to attempt to settle the remaining issue of interest on the lump sum payment, but the parties were unable to agree on a mutually acceptable settlement amount. (Langone Affidavit ¶46).

ANSWER: In a plain reading of the Affidavit by Charles Langone he states that he and his counsel attempted to settle the issue of interest on the lump payment but they did not offer a sufficient amount to sway Mr. Tyndall. The making this offer this is tantamount to the admission that they do owe interest on the lump sum payment.

Dated this 18 day of March, 2005.

                                          Respectfully submitted,
                                          By the Plaintiff, Pro-Se,

                                          _____
                                          Thomas E. Tyndall

## CERTIFICATE OF SERVICE

I, Thomas E. Tyndall, pro se plaintiff, certify that I caused a copy of the foregoing to be served to the following by __HAND__ on March __18__, 2005.

    Thomas M. Brockett, Local Counsel for the Defendants
    Robert M. Cheverie & Associates, P.C.
    333 East River Drive
    East Hartford, CT 06108

    United States District Court for the District of Connecticut
    Abraham Ribicoff Building
    Main Street
    Hartford, CT

                                            Plaintiff Pro-Se,

                                          _____
                                          Thomas E. Tyndall