UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

|   |   |
|---|---|
| THOMAS E. TYNDALL,<br><br>            Plaintiff,<br><br>v.<br><br>NEW ENGLAND TEAMSTERS & TRUCKING INDUSTRY PENSION FUND, DAVID W. LAUGHTON, PAUL V. WALSH, ANTHONY S. BUONPANE, GEORGE W. CASHMAN, J. LEO BARRY, JOHN J. MCCARTHY, JR., WILLIAM M. VAUGHN III, and J. DAWSON CUNNINGHAM,<br><br>            Defendants. | Case No. 3:03cv194(CFD) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

On April 29, 2004, this Court granted Defendant New England Teamsters & Trucking Industry Pension Fund's Motion for Partial Summary Judgment, ruling that the Fund did not wrongfully reduce Plaintiff Thomas E. Tyndall's monthly pension benefit from $284.00 to $218.00 because there was no amendment of the Plan and because the Trustees' actions were not arbitrary or capricious.

Defendant Fund now files this Supplemental Motion for Summary Judgment on the issue of whether Mr. Tyndall is entitled to interest on the lump sum payment of retroactive benefits he received in October 2001. As the Trustees of the Fund did not breach the terms of the Plan when they initially denied Mr. Tyndall a pension in 1990, and as the Plan does not expressly nor impliedly require interest on retroactive pension benefits, Mr. Tyndall is not entitled to interest on the lump sum payment.

I.  **FACTUAL BACKGROUND**

The facts set forth herein are based upon the Local Rule 56(a)(1) Statement of Facts attached to Defendant's Motion for Summary Judgment.

In May 1990, the Plaintiff Thomas E. Tyndall applied for a pension from the New England Teamsters and Trucking Industry Pension Fund. In July 1990, the Fund determined that Tyndall was not eligible for benefits based upon a break in service. The Fund informed Tyndall that his seventeen years and one month of pension credit had been cancelled because he failed, starting in 1971, to earn at least eight months of pension credit in any of six consecutive calendar years, and because by 1980, when he reached age 52, he had been out of covered employment for more than nine years.

While the Fund was incorrect in its assessment that Tyndall had had a break in service, it was correct in finding that Tyndall was not entitled to a pension as of July 1990. The Fund could have denied Tyndall's pension at that time because he had not worked at least six months in covered employment after age 49. Section 5.02(b) of the 1985 Pension Plan, which was the Plan in effect as of July 1990, when Tyndall first applied for a pension, states that in order to be eligible for a regular pension, a participant must:

> Have at least 6 months of Pension Credit during the contribution period after attaining age 49, except with respect to (1) a Statutory Pension, (2) a Disability Pension or (3) a Minimum Thirty-Year Service Pension. The Trustees may waive the requirement for 6 months of Pension Credit after age 49 if the Participant was disabled and could not earn Pension Credit for that reason.

On October 27, 1994, Tyndall filed an appeal with the Fund, arguing that he would have worked the six months after age 49 had he been aware that his years of

service credit had not been cancelled. Tyndall did not work in covered employment after 1977, when he was 49 years old.

In January 1995, the Trustees voted to waive the six months of service after age 49 requirement and award Tyndall a pension. As of October 1994, Tyndall still lacked the six months service in covered employment after age 49 requirement that he was missing in 1990. Nonetheless, the Trustees voted to waive the six-month service requirement and grant Tyndall a pension. Tyndall's effective retirement date was set as February 1, 1995.

The Normal Retirement Age under the Plan's Rules and Regulations is 64 years old.[1] (Exhibit 2). Because Tyndall was 67 years old at the time of his effective retirement date of February 1, 1995, he was eligible to receive an actuarial increase for late retirement pursuant to the Trustees' adopted policy of awarding an actuarial increase to the monthly benefits of a participant who retires after the Normal Retirement Age of 64 years of age. This policy, although in effect at the time, was not codified in the 1985 Rules and Regulations of the Plan, but it was included in the Fund's Summary Plan Description effective October 1991. The relevant section of the Summary Plan Description states:

> If your pension commences after Normal Retirement Age and you have not engaged in Normal Disqualifying Employment prior to the commencement of your pension, your benefit amount will be actuarially increased to reflect the number of months beyond Normal Retirement Age for which benefits have not been paid.

The actuarial increase is calculated as a 10.5% increase for each year over the Normal Retirement Age of 64. Since Tyndall was 67 years old at the time of his

---

[1] The Normal Retirement Age has been age 64 in every New England Teamsters Pension Plan since the enactment of E.R.I.S.A., and continues to be the Normal Retirement Age.

February 1, 1995 retirement date, he received an actuarial increase of 31.5% of his monthly benefit. Without the increase, Tyndall's monthly benefit was $256.25 per month. The actuarial increase equated to an extra $80.72 per month in pension benefits, for a total pension of $337.00 per month. Pursuant to Article VII of the 1985 Rules and Regulations, Tyndall selected the 50% husband and wife form of payment. This reduced his pension benefit by 15% to $287.00 per month commencing February 1, 1995, and then $284.00 per month beginning October 1, 1995.

In response to written inquiries from Tyndall, Fund Manager Charles Langone, in a letter dated April 6, 1995, explained to Tyndall that his pension had been calculated by adding the actuarial increase of $80.72, and reducing the monthly pension amount by 15% based upon Tyndall's selection of the 50% husband and wife plan.

On March 30, 2001, Tyndall filed an appeal with the Fund, requesting that his effective date be retroactively changed from February 1, 1995 to August 1, 1990, and also requesting that he receive past service credit for his employment with Trudon & Platt Motor Lines.

In August 2001, the Trustees heard Tyndall's appeal and voted to change his effective date to August 1, 1990, but denied his request to grant him past credit for his employment with Trudon & Platt Motor Lines. The Trustees agreed to change Tyndall's effective retirement date to August 1990 because the lower monthly benefit was the actuarial equivalent of the 1995 benefit that included the actuarial increase for late retirement. The request was granted because there was no financial impact to the Fund's assets.

On or about August 17, 2001, Langone advised Tyndall via letter that the Trustees had agreed to change his effective date to August 1, 1990, but had voted to deny his claim for additional service credit for his employment with Trudon & Platt Motor Lines. In the letter, Langone stated that the new monthly benefit amount would be less than Tyndall's then-current monthly amount of $284.00.

On or about August 24, 2001, Langone sent Tyndall another letter informing him that the Fund had completed the calculation of his benefit and that if he chose to accept the earlier effective date of August 1, 1990, he would receive $6392.00 in a lump sum payment for retroactive benefits, plus a payment of $2400.00 in Christmas checks. In addition, Langone informed Tyndall that his monthly benefit would be reduced from $284.00 to $216.00 due to the elimination of the actuarial increase that had been added to his pension when his effective retirement date had been February 1, 1995. Langone explained to Tyndall that the actuarial increase was no longer applicable because the new earlier effective retirement date would be prior to his attainment of the Normal Retirement Age of 64. There was no promise, let alone any mention of, interest being paid.

Langone attached to his August 24, 2001 letter to Tyndall a separate form that offered Tyndall the opportunity to select one of the two following options:


\_\_\_\_\_  I elect to change my benefit commencement date to August 1, 1990. I understand that I will receive a total retroactive payment of $8,792 and that my monthly benefit amount will be $216 starting September 1, 2001.


\_\_\_\_\_  I elect not to change my benefit commencement date to August 1, 1990. I understand that my benefit commencement date will remain February 1, 1995 and that I will not receive a retroactive payment of $8,792. My monthly benefit amount will continue to be $284.

In a letter dated September 5, 2001, Langone advised Tyndall that he was actually entitled to a monthly pension of $218.00, not $216.00, and requested that he choose whether he wanted to change his effective date by filling out the form that Langone had enclosed with his August 24, 2001 letter.

On or about September 18, 2001, Tyndall elected to change his effective retirement date to August 1, 1990 and receive a retroactive lump sum payment of $6402.00, plus $2400.00 in past Christmas checks. On or about October 4, 2001, Langone sent Tyndall a letter enclosing a check in the amount of $6402.00 for the adjustment of his benefit for the months of August 1990 through February 1995, as well as a check in the amount of $2400.00 in Christmas benefits. Langone also informed Tyndall that his monthly pension check for November 2001 would be in the new adjusted amount.

On or about December 7, 2001, Tyndall filed an appeal with the Trustees, requesting that his monthly benefit be reinstated to $284.00 per month. In a letter dated January 11, 2002, Langone explained to Tyndall the reasons why his monthly pension benefit had been reduced:

> The reduction in your monthly pension that resulted from the resetting of your pension effective date was due to the elimination of the late retirement actuarial increase that was calculated into the monthly pension amount that was initially paid to you based on the post- Normal Retirement Age effective date. By resetting your pension effective date to a date that precedes your attainment of Normal Retirement Age, you were no longer entitled to this actuarial increase as described in the Plan. The Pension Fund was obligated to make the appropriate adjustment in your monthly pension to account for the earlier effective date and the attendant life expectancy. If this was not done, duplicate benefits would have been paid to you and the Trustees would then be in violation of the Plan's Rules and Regulations and the fiduciary standards of Part 4 of Title I of ERISA.

In or about March 2002, the Trustees heard Tyndall's appeal to increase his monthly benefit from $218.00 to $284.00 per month, and voted not to increase his monthly benefit. In a letter dated March 21, 2002, Langone informed Tyndall that the Trustees had denied his appeal.

In a letter addressed to Langone and dated April 18, 2002, Tyndall requested that he receive interest on the lump sum payment he received in October 2001. At the May 2002 Trustees' meeting, the Trustees voted to deny Tyndall's request for interest on the lump sum amount, and Langone advised Tyndall of this decision in a letter dated May 23, 2002. Langone notified Tyndall that there was no provision in the Plan that would allow an award of interest on the lump sum payment he received as a result of Tyndall's election of an earlier retirement date of August 1990.

Tyndall subsequently filed this lawsuit in September 2002 seeking an increase in benefits, as well as interest on the lump sum payment. On April 29, 2004, the Court granted the Fund's Partial Motion for Summary Judgment, finding that the Trustees' reduction of Tyndall's monthly pension benefit did not alter, modify, or change the Plan.

On December 3, 2004, the parties attended a mediation session before Hon. Thomas P. Smith to attempt to settle the remaining issue of interest on the retroactive lump sum payment, but the parties were unable to agree on a mutually acceptable settlement amount.

## II.   ARGUMENT

### A.   Summary Judgment Standard

When appropriate, summary judgment is a favored means of final disposition of lawsuits, or portions thereof, without need for evidentiary hearings. *See Matsushita Elec.*

7

*Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Summary judgment should be granted if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The mere existence of a "scintilla of evidence" in support of the opposing party's position is not enough to frustrate a motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. at 322-23. A party opposing a properly brought motion for summary judgment bears the burden of going beyond the pleadings, and "designating 'specific facts showing that there is a genuine issue for trial.'" *Amnesty America. v. Town of W. Hartford*, 288 F.3d 467, 470 (2nd Cir. 2002), *quoting Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e)). A party opposing summary judgment cannot "defeat the motion by relying on the allegations in his pleading, or on conclusory statements." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2nd Cir. 1996).

**B.  The Standard of Review in the Instant Case is Whether the Action of the Trustees Was Arbitrary and Capricious.**

In *Firestone v. Bruch*, 489 U.S. 101 (1989), the Supreme Court set forth the standard of judicial review for decisions made by pension fund fiduciaries under ERISA. It held that a challenge to a denial of benefits will be reviewed under a *de novo* standard unless the benefit plan gives the fiduciary discretionary authority to construe the plan and/or determine eligibility for benefits. If the requisite discretionary language is contained in the plan, the fiduciary's decisions will be reviewed under an "arbitrary and capricious" standard. *Firestone*, 489 U.S. at 114-116.

This standard was followed by the Second Circuit in *Pagan v. Nynex Pension Plan*, 52 F.3d 438, 441 (2nd Cir. 1995). The Court held that "where the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" Accord: *Murphy v. International Business Machines Corporation*, 23 F.3d 719, 721 (2nd Cir. 1994); *Preston v. The American Federation of Television and Radio Artists Health Fund*, 2002 U.S. Dist. LEXIS 8826 (S.D.N.Y. 2002). "Once the administrators of a pension plan exercise their powers under the Plan, courts will not overturn their decision unless the plaintiff proves by a fair preponderance of the credible evidence that their decision is arbitrary and capricious, the product of bad faith, or not supported by substantial evidence." *Nass v. Staff Retirement Plan of Local 810, I.B.T.*, 515 F. Supp. 950, 958 (S.D.N.Y. 1981).

In the instant case, the necessary discretionary language is contained in both the Pension Plan and the Trust Agreement. (The Trust Agreement is attached to the Affidavit of Charles Langone as Exhibit 1; the Pension Plan is Exhibit 2). The Trust Agreement confers upon the Trustees of the Fund the sole power to establish the Pension Plan. See Article 1, Section 7; Article II, Section 2; Article IV, Section 3. Specifically, Article IV, Section 2 states that the Trustees are empowered:

> . . . to construe with discretionary authority, the provisions of this Trust Agreement, or the Plan adopted hereunder, and the terms thereof, and any such construction adopted in good faith is binding upon the Unions, the Employers, and the Employees and their families, dependents, beneficiaries and/or legal representatives.

Article VI, Section 3 of the Trust Agreement also confers upon the Trustees the authority to determine all questions regarding benefits and eligibility:

9

> The Trustees shall have full discretionary authority to determine and interpret eligibility requirements for benefits and to adopt rules and regulations setting forth same which shall be binding on the employees and their beneficiaries and dependents.

Article VI, Section 4 of the Trust Agreement further states that "benefits shall be provided and maintained by such means as the Trustees in their sole discretion determine." (Exhibit 1).

The Pension Plan also gives the Trustees substantial discretion. Article VIII, Section 8.03 of the 1985 Rules and Regulations of the Plan states that

> The Trustees shall be the judges of the standard of proof required in any case and of the application and interpretation of the Plan, and the decisions of the Trustees shall be binding on all parties, subject to appeal under Section 10.04.

The language according full discretionary authority upon the Trustees to construe the terms of the Trust Agreement and Plan and determine benefits and eligibility could not be more clearly spelled out. In this case, the "arbitrary and capricious" standard must be employed in reviewing the decision of the Trustees.

     **C.    The Trustees Did Not Breach the Terms of the Plan by Denying Tyndall a Pension in 1990.**

Plaintiff is seeking payment of interest on the lump sum benefit payment he received from the Fund in October 2001. In August 2001, pursuant to Tyndall's request, the Fund had granted his request to change his effective date from February 1995 to August 1990. Tyndall had made the selection with the full understanding that by changing his effective date, his monthly pension benefit would be reduced from $284 to $218 and that no interest would be paid. In conjunction with the change in effective date, the Fund paid Tyndall a lump sum amount that reflected the amount of benefits he would have earned between August 1990 and February 1995 had his pension application been

granted in August 1990. The corresponding change in monthly benefit was made to account for the fact that by changing his effective retirement date to 1990, when he was 62 years old, Tyndall was no longer entitled to the actuarial increase he had been receiving for a late retirement when he retired in February 1995, at age 67, three years above the normal retirement age. It must be noted that the Trustees' decision to pay the lower benefit amount effective August 1990 (and the corresponding lump sum payment), was based upon the fact that it was the actuarial equivalent of the higher monthly benefit granted in 1995. The Trustees did not intend to impact the Fund's assets by changing Tyndall's effective retirement date.

Tyndall now believes that he is entitled to interest on the lump sum amount he received in October 2001. The Second Circuit has acknowledged in *Dunnigan v. Metropolitan Life Insurance Company*, 277 F.3d 223 (2nd Cir. 2002), that interest on a lump sum payment of past-due benefits may be awarded where the delay was not justified. It also stated in *Dobson v. Hartford Financial Services Group, Inc.*, 389 F.3d 386 (2nd Cir. 2004), that interest on a delayed benefit is permissible where such interest is impliedly required by a Fund's Plan documents. As the delay here was justified, there was no breach of the Plan in initially denying the pension in 1990, and the Plan does not directly or impliedly require interest, Tyndall's claim must fail.

The retroactive payment made to Tyndall in October 2001 was not an award of past due benefits because Tyndall was not entitled to a regular pension in 1990 when he first applied. While the Fund admittedly denied Tyndall's pension application for the wrong reason, it is undisputed that Tyndall did not meet all of the eligibility prerequisites for earning a regular pension in 1990; namely, he did not have six months of service

credit in covered employment after age 49. Section 5.02(b) of the 1985 Rules and Regulations of the Plan states that "a participant must have at least 6 months of Pension Credit during the contribution period after attaining age 49." The provision also provides that the Trustees "*may* waive the requirement for 6 months of Pension Credit after age 49 if the Participant was *disabled* and *could not* earn Pension Credit for that reason." (Emphasis added).

Here, it is undisputed that Tyndall did not have six months of service credit in 1990. Although the Trustees had authority to waive that requirement, they were not required to do so under the terms of the Plan. Thus, Tyndall was not entitled to a pension in 1990. Tyndall was not disabled in August 1990.

In October 1994, however, the Trustees voted to waive the six-month requirement and grant Tyndall a pension, effective February 1995. Tyndall still lacked the six months of service after age 49, so the fact that the Trustees later waived the six-month requirement in 1995 does not mean that the Trustees erred in not waiving the requirement in 1990.

When in 2001 Tyndall requested that his retirement date be retroactively changed to August 1990, the Trustees again had no duty to grant this request because, as noted, Tyndall was not entitled to a pension in 1990 absent the Trustees' waiver of the six months after age 49 requirement. The Trustees voted in 2001 to grant Tyndall's request and effectively waive the six months after age 49 requirement for the second time by allowing him to change his effective date to 1990. However, the request simply required the Fund to reallocate the benefits owed Tyndall pursuant to an earlier retirement date at no cost to the Fund. Tyndall was given a lump sum retroactive benefit for August 1990

to February 1995, but not as part of a make whole remedy for past due amounts to which he was entitled. Tyndall's monthly benefit amount was reduced based upon the fact that he was now considered to have retired in August 1990 at age 62, as opposed to February 1995 at age 67. Thus, Tyndall was no longer entitled to an actuarial increase for late retirement and his monthly benefit was reduced in conjunction with the payment of the lump sum award.

Thus, this is not a situation in which the Fund, in paying the retroactive lump sum benefit, was doing so to make the grievant whole for benefits that were past due. The Trustees never breached the Plan in 1990 when they initially denied Tyndall a pension because Tyndall was not entitled to receive benefits from August 1990 to February 1995 absent a waiver. The Fund was not unjustly enriched since the benefits were not late in being paid to Tyndall, and therefore there was no make whole equitable remedy at stake in October 2001 when the lump sum payment was made. The Trustees simply accommodated Tyndall's request with the belief that the lower benefit amount from 1990 was actuarially equivalent to the higher 1995 benefit.

In *Dunnigan v. Metropolitan Life Insurance Company*, 277 F.3d 223 (2nd Cir. 2002), the Plaintiff alleged that she was entitled to disability benefits, that the payment of those benefits was delayed nearly five years, and that such delay was unreasonable. *Id.* at 230. Here, there was no unreasonable delay, as it is undisputed that Tyndall did not have the requisite six months of service after age 49. Thus, the Trustees did not breach the Plan, since they were not contractually obligated to grant Tyndall a pension in 1990. The Trustees had the option to waive the six-month after 49 requirement in their ***discretion*** if the participant was ***disabled*** after age 49 and ***could not earn*** pension credit for that

reason. Tyndall has never asserted that he was disabled as of 1990 and therefore unable to satisfy the service requirement, however. Furthermore, in *Dunnigan*, the Second Circuit, in holding that interest may be awarded as an equitable remedy, noted:

> When benefits are paid ***only after the date on which the beneficiary was entitled to receive them under the terms of the plan***, the beneficiary has not received the full value of what was promised and, to the same degree, the plan has realized an unjust enrichment (assuming the lateness was unjustified). *Id.* at 229 (Emphasis added).

Here, since the Fund was not contractually required to provide Tyndall with pension benefits from 1990 to 1995, the lump sum payment was not a lump sum retroactive award of past due benefits. "Whether interest is due under the terms of a plan is determined by inspecting the terms of the particular plan." *Dobson v. Hartford Financial Services Group, Inc.*, 389 F.3d 386, 396 (2nd Cir. 2004). Since the Trustees committed no breach in initially denying Tyndall a pension benefit, and since there is therefore nothing which must be remedied, we never reach the question found in *Dobson*; namely, whether one can discern from the Plan an implied agreement to pay interest on delayed disbursements.[2]

If anyone would be unjustly enriched here, it is Tyndall. He is seeking interest on the lump sum payment he received even though the payment was not for past due benefits owed, but rather was part of an actuarial adjustment. Tyndall selected to change his effective retirement date without any promise of interest.

An instructive case is *Campanella v. Mason Tenders' District Council Pension Plan*, 299 F.Supp. 2d 274 (S.D.N.Y., 2004). In that case, the Fund had previously denied the plaintiffs' claims for a pension in 1993 because they had failed to satisfy the Plan's

---

[2] There is no dispute that there is no express provision in the Plan which provides for interest on delayed benefits owed to a beneficiary.

eight-year vesting requirement. The Fund determined that the plaintiffs only had seven years of covered service, and that they had breaks in service which forfeited certain credits later earned. *Id.* at 277. One plaintiff's appeal was denied in 1994 by the Trustees, but the plaintiff later retained an attorney who argued to a new Fund Manager (who had replaced the previous manager) that he should have received credit for service based upon his receipt of worker's compensation benefits. The Trustees later agreed with the plaintiff's position and agreed in 1997 to grant him service credit so that he thereby qualified for a disability pension. *Id.* at 278. In 1998, after a similar argument presented by the same attorney, the Trustees also granted the other plaintiff a pension under the same theory. *Id.*

When the Fund in *Campanella* made the retroactive benefit payments to the plaintiffs, it did not include interest on those amounts. The Court, in denying the plaintiffs' claim for interest, noted that the fact that "the Trustees altered their determination and decided to grant both claimants disability pensions does not necessarily mean that the Trustees' initial denial of the [plaintiffs'] claims violated the Plan." *Id.* at 292.

Similarly here, the fact that the Defendant decided, in 1995, to waive the six months after age 49 service requirement and grant Tyndall a pension, and, in 2001, allowed Tyndall to change his effective date to August 1990, does not mean that the Trustees breached the terms of the Plan when they initially denied Tyndall's pension application in 1990. Furthermore, the awarding of the lump sum in 2001 is by no means an admission by the Trustees that their initial 1990 denial of Tyndall's application was unlawful or incorrect.

15

Since Tyndall was lacking the six months after age 49 requirement, and the Trustees, in their discretion, did not see a reason to waive the requirement in 1990 since Tyndall was not disabled, the awarding of the lump sum amount in 2001 was in no way a make whole remedy. The Trustees were not admitting, by agreeing to change the retirement date in 2001, that their initial decision to deny a pension in 1990 was incorrect. Rather, the Trustees recognized that since the six months after age 49 requirement had already been waived in 1995, there was no harm in granting Tyndall's request for an effective date of August 1990, since Tyndall had first applied for a pension in May 1990. In addition, the Fund assets were not affected by the change in retirement date.

As the Trustees did not breach the Plan in initially denying Tyndall a pension, and as the Plan does not expressly provide for interest on retroactive lump sum amounts, the Fund is not required to pay interest to Tyndall on the lump sum amount.

### D. Assuming the Benefits Were Delayed, the Delay Was Neither Unreasonable Nor Unjustified.

In *Dunnigan v. Metropolitan Life Insurance Company,* 277 F.3d 223, 230 (2nd Cir. 2002), the Court held that interest on retroactive benefit awards could be recovered as a form of equitable relief if the delay in granting benefits was unreasonable or unjustified. Assuming, *arguendo*, that the lump sum payment to Tyndall can be said to have been an award of delayed benefits that should have been paid to Tyndall in 1990, it still cannot be said that any alleged delay was unreasonable or unjustified. As noted above, the Trustees did not breach the Plan when they voted to deny Tyndall a pension. Even though the Trustees incorrectly assumed that Tyndall had a break in service, they were not required to award him a pension because of the six months service after age 49 requirement. Thus, the "delay" was neither unreasonable nor unjustified because Tyndall

was not entitled to a pension benefit at that time, absent the Trustees' decision to waive the aforementioned requirement.

Even assuming that the benefits were "delayed," Tyndall contributed to the delay. Following the July 1990 denial of his pension benefits, Tyndall did not file another appeal with the Fund until 1994, a span of four years. When the Trustees subsequently granted Tyndall a pension in February 1995, he then waited another six years before requesting that his effective date be changed to August 1990. Thus, any purported delay in receiving benefits was due, in large part, to Tyndall's inaction. See: *Campanella v. Mason Tenders' District Council Pension Plan*, 299 F. Supp.2d 274, 292 (S.D.N.Y.) (In finding that the plaintiffs were not entitled to interest on the retroactive pension benefits they received, the Court relied on the fact that the "multi-year delays by [the plaintiffs] between the initial denial of their claims for benefits and the re-initiation of their claims was a primary contributing factor to the length of time that elapsed before [the plaintiffs] ultimately received their disability pensions.").

Thus, any alleged "delay" in the awarding of benefits (and interest) was due in large part to Tyndall's dalliance.

### III. CONCLUSION

For all of the foregoing reasons, and on the record as a whole, the court should grant Defendants' Supplemental Motion for Summary Judgment in its entirety.

Respectfully submitted,

For the Defendants
By Their Attorneys

Jonathan M. Conti
Federal Bar. No 24593
Feinberg, Campbell & Zack, P.C.
177 Milk Street
Boston, MA 02109
(617) 338-1976
jmc@fczlaw.com

Local counsel,

Thomas M. Brockett
Federal Bar No. ct10873
Robert M. Cheverie & Associates, P.C.
333 East River Drive, Suite 101
East Hartford, CT 06108
(860) 290-9610
www:CheverieAndAssoc@AOL.com

## CERTIFICATE OF SERVICE

I, Jonathan M. Conti, hereby certify that I caused a copy of the foregoing to be served on pro se plaintiff Thomas E. Tyndall by depositing a copy thereof by certified mail with the United States Postal Service on February 11, 2005 addressed to Thomas E. Tyndall, P.O. Box 6041, Wolcott, CT 06716.

Jonathan M. Conti