UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS E. TYNDALL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NEW ENGLAND TEAMSTERS & TRUCKING )<br>INDUSTRY PENSION FUND, )<br>DAVID W. LAUGHTON, PAUL V. WALSH, )<br>ANTHONY S. BUONPANE, GEORGE W. )<br>CASHMAN, J. LEO BARRY, JOHN J. )<br>MCCARTHY, JR., WILLIAM M. VAUGHN III, )<br>and J. DAWSON CUNNINGHAM, )<br>)<br>Defendants. )<br>) | Case No. 3:03cv194(CFD) |

## AFFIDAVIT OF CHARLES LANGONE

I, Charles Langone, under oath and based on my personal knowledge, hereby depose and state the following:

1. My name is Charles Langone and I am the Fund Manager for the New England Teamsters & Trucking Industry Pension Fund (hereinafter "Pension Fund" or "Fund"). I have been the Fund Manager since October 1990. The Pension Fund has its principal place of business at 535 Boylston Street, Boston, Massachusetts 02116.

2. The Fund is a defined benefit multi-employer pension plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA").

3. The Fund was established for the purpose of receiving contributions and providing pension benefits to eligible employees pursuant to an Agreement and

Declaration of Trust dated April 11, 1958 ("Trust Agreement"), which has been amended from time to time. A true and correct copy of the Trust Agreement is attached as Exhibit 1.

4. The Fund is administered by an eight-member Board of Trustees in accordance with the terms of the Trust Agreement and the Rules and Regulations of the New England Teamsters and Trucking Industry Pension Plan ("Pension Plan" or "Plan"). The Board of Trustees consists of four trustees representing participating local teamster unions and four trustees representing employers contributing to the Fund. A true and correct copy of the 1985 Rules and Regulations of the Pension Plan governing the calculation of Plaintiff's pension benefit is attached hereto as Exhibit 2.

5. Contributions are paid to the Fund at an hourly rate determined by collective bargaining agreements, as defined by Article I, Section 1.07 of the 1985 Rules and Regulations of the Pension Plan, as well as by Section 1.07 of the 1994 Plan, and Section 1.08 of the 2003 Plan, between contributing employers and local teamster unions participating in the Fund. Contributions are paid on behalf of employees for each hour of employment "covered" by these collective bargaining agreements. Copies of the 1994 Rules and Regulations of the Pension Plan and the 2003 Rules and Regulations of the Pension Plan are attached hereto as Exhibits 3 and 4, respectively.

6. Contributing employers to the Fund are defined by Article I, Section 1.06 of the 1985 Plan, Section 1.08 of the 1994 Plan, and Section 1.09 of the 2003 Plan.

2

7. Participating Local Unions are defined as those unions that have been accepted for participation by the Fund Trustees and have accepted the Trust Agreement in writing pursuant to Article I, Section 1.05 of the 1985 Plan, Section 1.19 of the 1994 Plan, and Section 1.22 of the 2003 Plan.

8. As Fund Manager, I am responsible for the day-to-day administration of the Fund and the maintenance and oversight of all Fund records. Specifically, I ensure that contributions from contributing employers to the Fund are properly processed, that pension credit of Fund participants is accurately calculated and that pension benefits are paid in compliance with the Fund's Trust Agreement and Pension Plan, and in accordance with the directions, policies and procedures of the Fund's Board of Trustees. In addition, I process all appeals of participants and present these appeals to the Board of Trustees.

9. In the performance of my duties, I have personal knowledge of those documents governing the administration of the Fund including but not limited to the Trust Agreement, the Pension Plan, the relevant collective bargaining agreements, as well as any interpretative guidelines set forth by the Fund's Board of Trustees regarding Plan administration.

10. In May 1990, Thomas Tyndall filed an application with the Fund for a pension, which is attached hereto as Exhibit 5, with an intended retirement date of July 1, 1990.

11. The 1985 Rules and Regulations of the Pension Plan were in effect at the time of Mr. Tyndall's application for a pension in May 1990 and at the time of his retirement.

12. In a letter dated July 12, 1990, attached hereto as Exhibit 6, the Fund informed Mr. Tyndall that his application for a pension had been denied based upon a break in service.

13. The Fund informed Mr. Tyndall that his seventeen years and one month of pension credit had been cancelled because he failed, starting in 1971, to earn at least eight months of pension credit in any of six consecutive calendar years, and because by 1980, when he reached age 52, he had been out of covered employment for more than nine years. While the Fund was incorrect that Mr. Tyndall had had a break in service, Mr. Tyndall was not entitled to a pension in 1990 because he did not meet the Plan's requirements for a pension.

14. Article VIII, Section 8.03 of the 1985 Rules and Regulations states, in part:

> The Trustees shall be the judges of the standard of proof required in any case and of the application and interpretation of this Plan, and the decisions of the Trustees shall be final and binding on all parties, subject to appeal under Section 8.04.

15. Section 5.02(b) of the 1985 Pension Plan states that in order to be eligible for a regular pension, a participant must:

> Have at least 6 months of Pension Credit during the contribution period after attaining age 49, except with respect to (1) a Statutory Pension, (2) a Disability Pension or (3) a Minimum Thirty-Year Service Pension. The Trustees may waive the requirement for 6 months of Pension Credit after age 49 if the Participant was disabled and could not earn Pension Credit for that reason.

16. Section 6.05 of both the 1994 Plan and the 2003 Plan states that in order to be eligible for a regular pension, a participant must have

... at least 6 months of Contributory Credit after age 49 ... The Trustees may waive the requirement for six months of Pension Credit after age 49 if the Participant was disabled and could not earn Pension Credit for that reason.

17. Mr. Tyndall did not have six months of service after age 49 as of 1990, he did not work in covered employment after 1977, when he was 49 years old, and he was not disabled in August 1990.

18. On October 21, 1994, Mr. Tyndall filed an appeal with the Fund, attached hereto as Exhibit 7, regarding the Fund's rejection of his pension application, arguing that he would have worked the six months after age 49 had he been aware that his years of service credit had been cancelled.

19. In January 1995, the Trustees reviewed Mr. Tyndall's appeal and voted to waive the six months after age 49 requirement, as Mr. Tyndall still lacked the six months of service as of October 1994. The Trustees then voted to award Mr. Tyndall a pension benefit. Mr. Tyndall's effective retirement date was set as February 1, 1995. A copy of the memorandum which I prepared and presented to the Trustees at the August 1995 Trustees' meeting and the record of their decision is attached hereto as Exhibit 8.

20. In a letter dated January 25, 1995, attached hereto as Exhibit 9, I informed Mr. Tyndall that the Trustees had awarded him a pension of $287.00 per month. This benefit amount was calculated as follows: Mr. Tyndall had a normal retirement benefit amount of $256.25; he received an actuarial increase of $80.72; and that total amount of $337.00 was reduced by 15% for the husband and wife provision, resulting in a benefit of $287.00 per month.

5

21. Under Article I, Section 1.16 of the 1985 Rules and Regulations of the Plan, the Normal Retirement Age is 64 years old. The Normal Retirement Age has been 64 years old in every New England Teamsters and Trucking Industry Pension Plan since the enactment of ERISA, and continues to be the Normal Retirement Age.

22. It is the policy adopted by the Trustees of the Fund to actuarially increase the pension benefit of a participant who retires after the Normal Retirement Age. This policy, although in effect at the time, was not yet codified in the 1985 Rules and Regulations of the Pension Plan, but it was included in the Fund's Summary Plan Description effective October 1991, which is attached hereto as Exhibit 10.

23. The Fund's Summary Plan Description effective October 1991, in the Section titled "How to Apply for Benefits," and subtitled "Benefit Commencement Date," states:

> If your pension commences after Normal Retirement Age and you have not engaged in Normal Disqualifying Employment prior to the commencement of your pension, your benefit amount will be actuarially increased to reflect the number of months beyond Normal Retirement Age for which benefits have not been paid.

24. Because Mr. Tyndall was 67 years old at the time of his effective retirement date of February 1, 1995, he was eligible to receive an actuarial increase for retiring later than the Normal Retirement Age of 64, pursuant to the policy of the Fund and the Summary Plan Description effective October 1991.

25. The actuarial increase for late retirement is calculated as a 10.5% increase for each year over the Normal Retirement Age of 64. Since Mr. Tyndall was 67

years old at the time of his February 1, 1995 retirement date, he received an actuarial increase of 31.5% of his monthly benefit. Mr. Tyndall's monthly benefit without the actuarial increase was $256.25 per month. The actuarial increase equated to an extra $80.72 per month in pension benefits, for a total pension of $336.97 per month.

26. Pursuant to Article VII of the 1985 Rules and Regulations, Mr. Tyndall elected the 50% husband and wife form of payment, thereby reducing his pension amount by 15% to $287.00 per month commencing February 1, 1995 and then $284.00 per month beginning October 1, 1995. A copy of Mr. Tyndall's election of the husband and wife pension benefit is attached hereto as Exhibit 11, and a copy of the Fund's calculations in determining Mr. Tyndall's pension benefits is attached hereto as Exhibit 12.

27. In a letter dated April 6, 1995, attached hereto as Exhibit 13, written in response to inquiries from Mr. Tyndall, I explained to him how his pension had been calculated by adding the actuarial increase of $80.72, and then reducing the monthly pension amount by 15% based upon his selection of the 50% husband and wife plan.

28. On March 30, 2001, Mr. Tyndall filed an appeal with the Fund, attached hereto as Exhibit 14, requesting that his effective date be retroactively changed from February 1995 to August 1990, and also requesting that he receive past service credit for his employment with Trudon & Platt Motor Lines.

29. In or about August 2001, the Trustees heard Mr. Tyndall's appeal and voted to change his effective date from February 1, 1995 to August 1, 1990, but denied Mr. Tyndall's request for past credit for his employment with Trudon & Platt Motor Lines. A copy of the memorandum which I presented to the Trustees at the August 2001 meeting and the record of their decision are attached hereto as Exhibit 15.

30. In a letter dated August 17, 2001, attached hereto as Exhibit 16, I advised Mr. Tyndall that the Trustees had agreed to change his effective date to August 1, 1990, but had voted to deny his claim for additional service credit for his employment with Trudon & Platt Motor Lines. In the letter, I stated that the monthly benefit amount would be less than Mr. Tyndall's then- current monthly amount of $284.00.

31. The Trustees agreed to change Mr. Tyndall's effective retirement date to August 1990 because the lower monthly benefit was the actuarial equivalent of the 1995 benefit that included the actuarial increase for late retirement. The request was granted because there was no financial impact to the Fund's assets.

32. On or about August 24, 2001, I sent Mr. Tyndall a letter, attached hereto as Exhibit 17, informing him that the Fund had completed its calculation of his benefit and that if he chose to accept the earlier effective date of August 1, 1990, he would receive $6392.00 in a lump sum payment for retroactive benefits, plus a payment of $2400.00 in Christmas checks. In addition, I informed Mr. Tyndall that his monthly benefit would be reduced from

$284.00 to $218.00 per month due to the elimination of the actuarial increase that had been added to his pension when his effective date had been February 1, 1995. I also informed Mr. Tyndall that the actuarial increase was no longer applicable because the new earlier effective retirement date would be prior to his attainment of the Normal Retirement Age of 64. There was no promise, nor even any mention, of interest being paid.

33. I attached to my August 24, 2001 letter to Mr. Tyndall a separate form which offered him the opportunity to select one of the two following options:

> \_\_\_ I elect to change my benefit commencement date to August 1, 1990. I understand that I will receive a total retroactive payment of $8,792 and that my monthly benefit amount will be $216 starting September 1, 2001.

> \_\_\_ I elect not to change my benefit commencement date to August 1, 1990. I understand that my benefit commencement date will remain February 1, 1995 and that I will not receive a retroactive payment of $8,792. My monthly benefit amount will continue to be $284.

34. In a letter dated September 5, 2001, attached hereto as Exhibit 18, Mr. Tyndall was advised that he was actually entitled to a monthly pension of $218.00 per month, and requested that he choose whether he wanted to change his effective date by filling out the form that I had enclosed with my August 24, 2001 letter to him.

35. On or about September 18, 2001, Mr. Tyndall elected to change his benefit commencement date to August 1, 1990 and receive a retroactive lump sum payment, including Christmas checks, of $8934.00 by completing the form attached to my August 24, 2001 letter, which is attached hereto as Exhibit 19.

9

36. On or about October 4, 2001, I sent Mr. Tyndall a letter, attached hereto as Exhibit 20, enclosing a check in the amount of $6402.00 for the adjustment of his benefit for the months of August 1990 through October 2001, as well as a check in the amount of $2400.00 representing the adjustment to his Christmas benefit. I also informed Mr. Tyndall that his monthly pension check for November 2001 would be in the new adjusted amount.

37. On or about December 7, 2001, Mr. Tyndall filed an appeal with the Trustees, attached hereto as Exhibit 21, requesting that his monthly benefit be reinstated to $284.00 per month.

38. In a letter dated January 11, 2002, attached hereto as Exhibit 22, I explained to Mr. Tyndall the reasons why his monthly pension benefit had been reduced:

> The reduction in your monthly pension that resulted from the resetting of your pension effective date was due to the elimination of the late retirement actuarial increase that was calculated into the monthly pension amount that was initially paid to you based on the post- Normal Retirement Age effective date. By resetting your pension effective date to a date that precedes your attainment of Normal Retirement Age, you were no longer entitled to this actuarial increase as described in the Plan. The Pension Fund was obligated to make the appropriate adjustment in your monthly pension to account for the earlier effective date and the attendant life expectancy. If this was not done, duplicate benefits would have been paid to you and the Trustees would then be in violation of the Plan's Rules and Regulations and the fiduciary standards of Part 4 of Title I of ERISA.

39. In or about March 2002, the Trustees heard Mr. Tyndall's appeal to increase his monthly benefit from $218.00 to $284.00 per month, and voted not to increase Mr. Tyndall's monthly benefit. A copy of the memorandum which I presented to the Trustees at the March 2002 meeting and the record of their decision are attached as Exhibit 23.

40. In a letter dated March 21, 2002, and attached hereto as Exhibit 24, I informed Mr. Tyndall that the Trustees had denied his appeal to increase his monthly benefits from $218.00 to $284.00.

41. In a letter addressed to me dated April 18, 2002 and attached hereto as Exhibit 25, Mr. Tyndall requested that he receive interest on the lump sum payment he received in October 2001.

42. There is no provision in the 2003 Plan, or any preceding Plan, that provides for the payment of interest on retroactive benefits.

43. At the May 2002 Trustees' meeting, the Trustees voted to deny Mr. Tyndall's request for interest on the lump sum amount. A copy of the memorandum I presented to the Trustees at the May 2002 Trustees meeting and the record of their decision, are attached as Exhibit 26. I advised Mr. Tyndall of this decision in a letter dated May 23, 2002, attached hereto as Exhibit 27. In the letter, I explained to Mr. Tyndall that there was no provision in the Plan that would allow an award of interest on the lump sum payment he had received as a result of his election of the earlier retirement date of August 1990.

44. In September 2002, Mr. Tyndall filed suit against the Fund, seeking an increase in benefits, as well as interest on the lump sum payment he received in October 2001.

45. On April 29, 2004, the Court granted the Fund's Motion for Partial Summary Judgment, finding that the Trustees' reduction of Mr. Tyndall's monthly pension benefit did not alter, modify, or change the Plan.

46. On December 3, 2004, I attended a mediation session with Fund counsel and Mr. Tyndall before Hon. Thomas P. Smith to attempt to settle the remaining issue of interest on the lump sum payment, but we were unable to agree on a mutually acceptable settlement amount.

SIGNED UNDER THE PENALTIES OF PERJURY THIS 11th DAY OF FEBRUARY, 2005.

_____
CHARLES LANGONE

Then personally appeared the above-named Charles Langone and acknowledged the foregoing instrument to be his free act and deed, before me,

_____
Notary Public

Joanne L. Mason
Notary Public
My Commission Expires
November 20, 2009

12