UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED

2005 NOV -3 A 9: 42

| | |
|---|---|
| THOMAS E. TYNDALL,<br><br>      Plaintiff,<br><br>v.<br><br>NEW ENGLAND TEAMSTERS & TRUCKING INDUSTRY PENSION FUND, DAVID W. LAUGHTON, PAUL V. WALSH, ANTHONY S. BUONPANE, GEORGE W. CASHMAN, J. LEO BARRY, JOHN J. MCCARTHY, JR., WILLIAM M. VAUGHN III, and J. DAWSON CUNNINGHAM,<br><br>      Defendants. | Case No. 3:03cv194(CFD) |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

Defendants New England Teamsters & Trucking Industry Pension Fund, et al, hereby file this Reply Memorandum of Law in Support of their Supplemental Motion for Summary Judgment. Defendants' Supplemental Motion for Summary Judgment should be granted because Plaintiff was not entitled to a pension in 1990; the lump sum payment Plaintiff received was not for past due benefits; Plaintiff contributed to any delay; and the Plan does not expressly nor impliedly provide for interest on retroactive pension benefits.

**I.    The Trustees' Actions Were Not Arbitrary and Capricious.**

In reviewing the decision of the Trustees to reject Plaintiff Thomas Tyndall's request for interest on the retroactive lump sum benefits he received in October 2001, the proper standard for analyzing the decision is an arbitrary and capricious standard. *Firestone v. Bruch,* 489 U.S. 101 (1989).

A.  <u>Plaintiff Was Not Entitled to a Pension in 1990.</u>

Plaintiff continues to assert that pension benefits were wrongfully withheld from him in 1990, that the Fund was consequently unjustly enriched, and that he is therefore entitled to interest on the lump sum payment of benefits he received in October 2001.

As was previously explained in Defendants' initial Memorandum of Law, when Mr. Tyndall applied for a pension in 1990, he did not meet the requirements of Article V, Section 5.02(b) of the 1985 Plan in that he did not have at least six months of pension credit after attaining age 49.

In February 1995, after an appeal by Mr. Tyndall (the first time he had ever appealed a Fund decision), the Trustees voted to waive the six months of service after age 49 requirement and award him a pension. Although under the terms of the Plan, Plaintiff still lacked the requisite six months of service, the Trustees exercised the discretion provided to them under the Plan to waive that requirement. The fact that the Trustees voted to waive the requirement in 1995 does not mean, however, that the Fund's denial of Tyndall's application in 1990 was in error.[1]

Defendants are not claiming, as Plaintiff attempts to misrepresent, that the Trustees just "gave money away" by granting Tyndall a pension in 1995. The Trustees had discretion under the Plan to *waive* the six-month after age 49 requirement. After Mr. Tyndall appealed the decision to the Trustees, they exercised that discretion. The

---

[1]  Plaintiff goes to great lengths to point out that he was not disabled in 1990, and that Defendants are somehow attempting to distort the record by alleging that he was disabled. (Plaintiff's Request for a Denial and Rejection of Defendants' Supplemental Motion for Summary Judgment, p. 2; Memorandum of Law by Plaintiff Requesting a Denial of Defendants' Supplemental Motion for Summary Judgment, p. 5). Plaintiff misinterprets Defendants' arguments. Defendants agree with Mr. Tyndall that he was *not* disabled in August 1990. Defendants are simply pointing out that Article V, Section 5.02(b) of the 1985 Plan provides that if a participant does not have six months of pension credit after age 49, "the Trustees may waive the requirement for 6 months of Pension Credit after age 49 *if the Participant was disabled and could not earn Pension Credit for that reason."* (Emphasis added).

2

granting of the waiver through the exercise of the Trustees' discretion in 1995 does not change the fact that Tyndall did not have six months of pension credit after age 49 when he applied for a pension in 1990.

B.   The Lump Sum Payment Was Not for Past Due Benefits.

Plaintiff argues that he is entitled to interest because allowing the Fund to retain interest on "wrongfully withheld funds" would constitute unjust enrichment. The Fund was not unjustly enriched, however, because the benefits were not late in being paid.

As noted, *infra*, Mr. Tyndall was not entitled to a pension in 1990 because he was lacking six months of pension credit after age 49. When the Fund granted Tyndall's 2001 request to change his retirement date from February 1995 to August 1990, the Trustees voted to do so because the request simply required the Fund to reallocate the benefits owed Tyndall pursuant to an earlier retirement date at no cost to the Fund.

The lump sum amount for retroactive benefits from August 1990 to February 1995 was not made as part of a make whole remedy for past due amounts. Rather, the lump sum payment was made as part of an actuarial adjustment tied to the simultaneous reduction of Tyndall's monthly benefit amount caused by the loss of an actuarial increase for late retirement.[2]

Thus, when the Trustees granted Tyndall's request to change his retirement date, they did so with the understanding that the lower benefit amount from 1990 was actuarially equivalent to the higher monthly 1995 benefit, and was not an award of past due benefits.

---

[2]   With the earlier retirement date, Tyndall was considered to have retired at age 62 in August 1990, and not age 67 in February 1995. Consequently, Tyndall was no longer entitled to the monthly increase for retiring after the Normal Retirement Age of 64.

3

C.   Plaintiff Contributed to any Alleged Delay in the Awarding of Benefits.

Even assuming, *arguendo,* that there was a "delay" in awarding benefits to Mr. Tyndall, Tyndall's actions greatly contributed to the delay. Tyndall inquired about his pension in 1980 (although he did not file a formal application for benefits at that time). After being notified by Pension Supervisor Margaret Hurst in a letter dated June 23, 1980, that it was her opinion that he had had a break in service, Mr. Tyndall made no further inquiries with the Fund until ten years later, in 1990.

Furthermore, following the Fund's denial of his initial pension application in July 1990, Tyndall did not appeal that decision. Rather, Tyndall waited until June 1994 before again inquiring into his eligibility. The first time that Tyndall filed an appeal with the Trustees was in October 1994. Lastly, after being awarded a pension in February 1995, Tyndall did nothing for another six years until requesting, in 2001, that his effective retirement date be changed from February 1995 to August 1990. Only after he received his lump sum payment of benefits in October 2001, did Tyndall seek interest.

In *Campanella v. Mason Tenders' District Council Pension Plan,* 2005 U.S. App. LEXIS 3081, 34 Employee Benefits Cas. (BNA) 1754 (2nd Cir.) (February 22, 2005), the Second Circuit held that the claimants were not entitled to interest on the delayed payment of benefits where the claimants contributed to the delay by not reinitiating their claims until two years after their initial claims had been denied. The court also noted that as soon as the Plan decided in the claimants' favor, the Plan began making payments without delay.

Here, Mr. Tyndall waited almost four years between the initial denial of his pension in 1990, and the filing of his renewed claim in 1994. When the Trustees awarded

4

him a pension in 1995, Tyndall waited another six years before requesting that his retirement date be changed to August 1990. The Trustees once again accommodated him, and he received the lump sum payment of retroactive benefits shortly thereafter. Thus, it is clear that any delay was caused by Mr. Tyndall's own dalliance.

D.    Plaintiff Does Not Have an Estoppel Claim.

Plaintiff appears to be arguing that he would have earned the six months of pension credit after age 49 if he knew that by doing so, he would have been entitled to a reduced pension. In order to establish a claim for equitable estoppel in the Second Circuit, a plaintiff must show: (1) a material misrepresentation, (2) reasonable reliance, and (3) injury as a result of the reasonable reliance. *Herter v. Dick's Clothing & Sporting Goods, Inc.*, 58 F.Supp.2d 306, 312 (S.D.N.Y. 1999). "The Second Circuit has held, however, that estoppel applies in ERISA cases only in 'extraordinary circumstances.'" *Cerasoli v. Xomed, Inc.*, 47 F.Supp.2d 401, 411 (W.D.N.Y. 1999), quoting *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 78 (2nd Cir. 1996).

Mr. Tyndall cites to a June 23, 1980 letter he received from then Fund Supervisor Margaret Hurst as evidence that the Fund provided him with false information upon which he detrimentally relied. First, it should be noted that Tyndall never formally applied for a pension in 1980. He sent a letter to the Fund and appeared at the Fund office seeking information. In response, Ms. Hurst wrote him a letter stating that it "would appear that you do not meet the General Eligibility Requirements" because of a break in service. Hurst concluded her letter by writing:

> All statements concerning eligibility, credits and status contained in this letter are subject to review at any time hereafter. Approval of all pensions is subject to a vote of approval by the Board of Trustees of the Fund as well as the employer's continued compliance with the Rules and Regulations of the Fund.

Thus, Hurst clearly noted that her opinion was subject to review and was not binding.[3] In addition, Tyndall never filed a formal application with the Fund in 1980 and did not further appeal Hurst's opinion at that time. Instead, Tyndall did nothing for ten years.

In addition, no one from the Fund ever told Tyndall that even if he worked the six months after age 49, he would *not* be entitled to a reduced pension. The Fund was not obligated to advise Mr. Tyndall as to every single aspect of the Plan, nor was it required to provide him with every possible suggestion for how he should go about qualifying for a pension. "ERISA does not require plan administrators to investigate each participant's circumstances and prepare advisory opinions for literally thousands of employees." *Chojnacki v. Georgia-Pacific Corp.*, 108 F.3d 810, 817-818 (7th Cir. 1997).

While Plaintiff now claims that had he known about the six months of pension credit after age 49 requirement in 1980, he would have earned those credits, such an assertion is speculative considering Mr. Tyndall's work record. Tyndall turned 49 years of age on January 31, 1977. In 1978, 1979, and 1980, during the three years after Tyndall attained age 49, he did not earn any pension credit.

Given that Tyndall failed to earn pension credit in covered employment for three years prior to any alleged misrepresentation by the Fund, the reliance element of an estoppel claim is merely speculative.

E.   <u>The Plan Does Not Provide for the Paying of Interest.</u>

Plaintiff argues that he is entitled to interest on the basis of Article VIII, Section 8.02 of the 1985 Plan, which provides that if a claimant for benefits "makes a willfully false statement material to his claim . . . the *Trustees* shall have the right to recover, through legal proceedings or offsetting against future benefits any benefits paid in

---

[3]   Hurst included a copy of the 1979 Pension Plan in her letter to Tyndall dated June 23, 1980.

6

reliance on any false statement, information, or proof submitted by a claimant . . . *plus interest.*" (Emphasis added).

The first problem with this argument is that there is no language in the Plan that provides for the payment of interest on retroactive lump sum amounts. The fact that the Plan gives *the Fund* the right to collect interest on benefits distributed to a claimant who commits fraud does not, in any way, lead to the conclusion that a claimant is entitled to interest on his lump sum of retroactive benefits. Article VIII, Section 8.02 has nothing to do with the situation here.

For the same reasons, Plaintiff's citation to Article V, Section 4 of the Restated Agreement and Declaration of Trust is equally unavailing. That provision involves an employer's obligation to make contributions to the Funds. The reason why this provision requires interest on delinquent contributions is that a failure to do so may be deemed an interest free loan to a contributing employer, which is a prohibited transaction. This language has absolutely no relation to Mr. Tyndall's claim for interest on the lump sum payment of retroactive benefits he received in 2001.

## II. Defendants' Settlement Offer Does Not Constitute an Admission of Liability.

Plaintiff states on page 9 of his Local Rule 56(a)1 Statement of Facts that the Defendants' settlement offer during the mediation session held before Hon. Thomas P. Smith on December 3, 2004 was "tantamount to the admission that they do owe interest on the lump sum payment." Pursuant to Section 408 of the Federal Rules of Evidence, however, such settlement evidence is not admissible:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its

amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible . . .

Section 408 excludes settlement material offered to prove liability for two main reasons. First, "evidence of settlement offers is irrelevant to the issue of liability 'since the offer may be motivated by a desire for peace rather than from any concession of weakness of position.'" *ESPN, Inc. v. Office of the Commissioner of Baseball*, 76 F.Supp.2d 383, 410 (S.D.N.Y. 1999), quoting Rule 408, Advisory Committee Notes. Second, the rule reflects the "'promotion of the public policy favoring the compromise and settlement of disputes.'" *Id.*, quoting Rule 408, Advisory Committee Notes. Accord: *Manko v. United States*, 87 F.3d 50, 54 (2nd Cir. 1996).

In any event, the Fund's settlement offer contemplated the settlement of additional spurious claims Mr. Tyndall is threatening to make against the Fund. Peace with this overly litigious Plaintiff was clearly the Fund's motivation for making a settlement offer.

### III. Plaintiff's Request that the Court Reconsider its Order Granting Defendants' Initial Motion for Summary Judgment is Time-Barred.

On page 3 of Plaintiff's Request for a Denial and Rejection of Defendants' Supplemental Motion for Summary Judgment, Plaintiff asks that the Court vacate its earlier decision granting Defendants' initial Motion for Summary Judgment and "allow the Plaintiff the right to argue all the points of the first half of this case." This request should be denied because Plaintiff was required to file a Motion for Reconsideration within ten days of the issuance of the Court's decision pursuant to Local Rule 7(c)(1).

This Court issued its Ruling on Motion for Summary Judgment in Defendant's favor on April 29, 2004, almost a year ago. Plaintiff's request that the Court now re-visit

its earlier decision is therefore clearly time-barred. Furthermore, Plaintiff's citation to Kevin F. Rowe's January 2, 2003 Standing Order is irrelevant considering that the parties, with the Court's approval, agreed to a date for filing dispositive motions that was more than seven months from the time the case was transferred to this Court.

### III. Conclusion

The reasoning behind the Fund's initial denial of Mr. Tyndall's pension application in 1990 was a mistake made by a Fund employee (although Tyndall's application still could have been denied at that time because he did not have six months of pension credit after age 49). When Tyndall finally appealed and brought the issue to the Trustees' attention in 1994, it was immediately corrected, and Tyndall was awarded a pension effective February 1995. The Trustees could have taken the position that Mr. Tyndall would never have returned to covered employment and earned pension credit after age 49 given his employment history. The Trustees did not. Mr. Tyndall was given the benefit of the doubt and awarded a pension. When Mr. Tyndall then asked, six years later, to change his effective retirement date to August 1990, the Trustees again gave him the benefit of the doubt and accommodated his request.

It seems, however, that no good deed goes unpunished. Were this Court to grant interest on the lump sum given the Plaintiff's delays in raising this claim, it would result in the unjust enrichment of the Plaintiff.

For all of the foregoing reasons, and on the record as a whole, the Court should grant Defendants' Supplemental Motion for Summary Judgment in its entirety.

Dated: June 30, 2005                           Respectfully submitted

                                               For the Defendants
                                               By their attorneys,

                                               Jonathan M. Conti
                                               Federal Bar No. ct24593
                                               Feinberg, Campbell & Zack, P.C.
                                               177 Milk Street
                                               Boston, MA  02109
                                               (617) 338-1976
                                               www:jmc@fczlaw.com


                                               By Local Counsel,


                                               _____
                                               Thomas M. Brockett,
                                               Federal Bar No. ct10873
                                               Robert M. Cheverie & Associates, P.C.
                                               333 East River Drive, Suite 101
                                               East Hartford, CT 06108]
                                               (860) 290-9610
                                               www:CheverieAndAssoc@AOL.com


## CERTIFICATE OF SERVICE

I, Jonathan M. Conti, hereby certify that I caused a copy of the foregoing to be served on pro se plaintiff Thomas E. Tyndall by sending a copy thereof via certified mail on June 30, 2005 addressed to Thomas E. Tyndall, P.O. Box 6041, Wolcott, CT 06716.

                                               Jonathan M. Conti