UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

THOMAS E. TYNDALL,           )
                              )
          Plaintiff,        )
                              )
v.                           )
                              )
NEW ENGLAND TEAMSTERS & TRUCKING   )
INDUSTRY PENSION FUND,        )   Case No. 3:03cv194(CFD)
DAVID W. LAUGHTON, PAUL V. WALSH,  )
ANTHONY S. BONPANE, GEORGE W.    )
CASHMAN, J. LEO BARRY, JOHN J.     )
MCCARTHY, JR., WILLIAM M. VAUGHN III, )
and J. DAWSON CUNNINGHAM,    )
                              )
          Defendants.    )

**STATEMENT OF FACTS IN SUPPORT OF PLAINTIFF'S
REQUEST FOR SUMMARY JUDGMENT.**

1. Plaintiff Pro Se Thomas E. Tyndall started working in covered employment early in 1951 and did continue to work in covered employment until 1970 after which he worked sporadically through 1972, his final covered employment ended in 1984. (Copy of Pension Credits included) Exhibit #1.

2. Thomas Tyndall, Plaintiff, in working from 1951 through 1970 did accumulate in excess of 15 years covered employment which means plaintiff was **fully vested** in the Pension Plan.

3. It took 15 years of credited employment to be vested in the Pension Plan; Plaintiff had 17 years, 1 month credit. (Copy of Pension Credits included) Exhibit #1.

4. During the years starting in April 1958, the Pension Fund, New England Teamsters and Trucking Industry Pension Fund (Fund)(Plan) did send to all participants in the Fund yearly information and updates of participants work records and also copies of the Fund's Pension Plans.

5. When Plaintiff ceased to work steadily in 1972 under covered employment, he no longer received updates and/or newer Pension Plans even though he was fully vested in the Plan.

6.  In the year 1980 Plaintiff Thomas Tyndall traveled to 535 Boylston Street, Boston, Mass. where the Fund office was located and inquired as to what he was entitled to for all his service from 1951 through 1972 and longer. Plaintiff was advised by Fund Officials he had lost all his Pension Credits because he had a break in service. This break in service proved to be an error on the part of the Fund Official as Mr. Tyndall was **fully vested** as explained earlier in paragraph #2. Letter was from Margaret Hurst, Fund Supervisor. (Copy of Denial included) Exhibit #2.

7.  Plaintiff did nothing on record from 1980 until 1990 when he did approach the Fund and again was rejected by the same Fund official, Margaret Hurst. Not for the same reason as the rejection in year 1980 but for a different reason. (Copy of Rejection included) Exhibit #3.

8.  Plaintiff now in 1990 did show much concern because he was 62 years old and did apply to Social Security for his Social Security retirement. Plaintiff now approached Local 671 International Brotherhood of Teamsters, East Hartford, CT about this possible loss of pension, and was advised that he truly did have sufficient credits and was fully vested in the plan.

9.  Plaintiff files proper application for pension, May 1990 and again rejected, by Helen Debricini, Fund Manager. This letter was also false information. Exhibit #4.

10. Between the years 1990 and 1994 Plaintiff did request from the Fund copies of all the pension plans from 1958 thru 1994. Upon perusing all the plans, Plaintiff did discover that all the rejection letters were very wrong misinformation.

11. In October 1994, Plaintiff formulated an appeal letter refuting all the rejection letters he had received from the Fund officials over the time period of 1980-1994 – fourteen (14) years. (Copy of Appeal Letter included) Exhibit #5

12. In October 1994, Plaintiff did send stated appeal letter directly to the Trustees of the Plan. The Trustees received the appeal in October 1994 and did, at their next meeting in January 1995 award Plaintiff a reduced pension effective February 1, 1995. (Copy of Pension Award included) Exhibit #6.

13. Plaintiff received a monthly pension of $287.00 per month.

14. Everything went along fine until the Plaintiff realized and petitioned the Fund about the payments Plaintiff should have been receiving between the date of his application in 1990 and the granting of his pension in 1995 – this time period amounted to fifty-four (54) months. (Copy of letter asking about back payment included.) Exhibit #7.

15. When the Trustees became aware of this period (54 months), they at their next meeting did agree that Plaintiff was entitled to back payments from application date until inception date (again, 54 months). 54 months times $218.00 = $11,772.00.

16. On October 4, 2001, Plaintiff did receive 2 checks to cover the amount that was missing from Plaintiffs pension benefits for the period of time between the application and granting of Plaintiff's pension. From the total amount $11,772.00 the Fund did subtract 54 months of the increase due to the age the participant was when the Pension Fund officers set the wrong inception date. (Copy of Funds letter explaining the changes that were to take place.) Exhibit #8.

17. The two (2) checks received by the Plaintiff to cover his loss of money for the fifty-four (54) months of pension benefits did not include any interest and that's what this application for summary judgment is about. (Copy of two checks included.) Exhibit #9.

18. The true facts in this matter are:

   a. Plaintiff applies for pension in 1980 – rejected – Based on false misinformation. (Exhibit #2).

   b. Plaintiff reapplies for pension in 1990 – rejected – Based on false misinformation. (Exhibit #3).

   c. Plaintiff receives letter in 1990 from Fund reaffirming rejection – Based on false misinformation. (Exhibit #4).

   d. Plaintiff filed proper application for pension in May 1990 – rejected – Based on false misinformation. (Exhibit #4).

   e. October 1994, Plaintiff appeals rejected application for pension. (Exhibit #5).

   f. At January 1995 Trustees *do* in spite of all rejections by Fund officials grant a pension. Pension is granted because of all the false misinformation told to participant over the fourteen (14) year period. (Copy enclosed) Exhibit #6.

   g. Pension granted at January 1995 Trustees meeting is started on February 1, 1995.

   h. No back payments are tendered to Plaintiff at the inception of this reduced pension benefit. Plaintiff was due 54 x $218.00 = $11,772.00 but Pension Fund paid age increase instead.

   i. Plaintiff went on his merry way until realizing he was due payments from the date of application of his pension to the date of inception.

   j. Plaintiff does ask for in his appeal letter of March 30, 2001 the payments he was due for the time from August 1990 thru January 1995. (Exhibit #7).

   k. Trustees at their very next meeting in August 2001 did agree with and award Plaintiff back payments for the time period Plaintiff had written about. (Exhibit #8).

l.  In October 2001, Plaintiff received two checks from the Fund one to cover the back payments due plus number two, a recalculated Christmas benefit Plaintiff was due. However, there was no interest paid on either check for the time period that the Pension Fund had held and had the use of these funds. (Exhibit #9)

m.  The fact that the Pension Fund had the use of said funds for the time that it did constitutes **unjust enrichment** to the Fund. Funds which this Plaintiff should have been paid, because these funds were rightly his.

n.  Plaintiff does not request from this court the total amount that the use of these funds generated, but only for the 12% amount that the Pension Fund demands on funds owed to the Fund as noted in the Trust Agreement which governs the activity of the pension fund.

o.  In accordance with Sec. 502(g)(2) of Employee Retirement Income Security Act of 1974, as amended, the Trustees do establish the rate of interest to be paid by employers on delinquent contributions to be the rate prescribed under Sec. 6621 of the Internal Revenue Code of 1954 (currently 12% per annum); and further, liquidated damages shall be assessed in an amount of 20% of the amount of the delinquency, or such higher percentage as may be permitted under Federal or State law, plus reasonable attorneys' fees and cost of the actions. The Trustees may take any action necessary to enforce payment of the contributions due hereunder, including but not limited to, proceedings at law and in equity

p.  The 1985 Pension Plan which Fund Manager Charles Langone stated was the plan in effect when plaintiff Thomas Tyndall put in his application for retirement in May 1990 has in it Article VIII, Section 8.02, Page 50, pertaining to misinformation, fraudulent and willful false statements (Copy of Section 8.02 enclosed) (Exhibit #11), however in this instant suit it was **not** the Plaintiff, Thomas Tyndall Pro Se who submitted the false statements, misinformation, and fraudulent information to the Trustee's in regards to Tyndall's application for Pension. It was the Pension Fund Officials who submitted the fraudulent information (IE) Margaret Hurst, Plan Supervisor and Helen Debricini, Fund Manager. Margaret Hurst, Two (2) False Letters, one in 1980 (Exhibit #2), the second (Exhibit #3) in 1990 (copies enclosed). Helen Debrecini, Fund Manager, One (1) False Letter in 1990 (copy enclosed). Exhibit #11.

q.  New England Teamster and Trucking Industry Pension Plan 1985, Article VIII. Applications, Benefit Payments, Retirement and Benefit Suspensions. Sec. 8.02 Information and Proof. (Exhibit #11.) Every claimant for benefits shall furnish at the request of the Trustees, any information or proof reasonably required to determine his benefit rights. If the claimant makes a willfully false statement material to his application or furnishes fraudulent information or proof material to his claim, benefits not vested under this Plan (as defined in Section 8.09) may be denied, suspended, or discounted. The Trustees shall have the right to recover,

through legal proceedings or offsetting against future benefits any benefits paid in reliance of any false statement, information, or proof submitted by a claimant (including withholding of material fact) **plus interest and costs, including attorney fees, without limitation** by recovery through offset of benefit payments as permitted by this Section. Further, in the administration of these rules concerning suspension of benefits, the Trustees may require of the Pensioner that he furnish evidence from the Social Security Administration concerning his employment history during a specified period of time. Exhibit #11.

In Summation of this Statement of Fact, Plaintiff does affirm that because of all the false and misleading letters Plaintiff received from the Pension Plan officials over the period of 14 plus years, he is entitled to Judgment for the Plaintiff in equity and to make the Plaintiff whole.

Respectfully submitted,

By the Plaintiff, Pro-Se,

Thomas E. Tyndall

Dated this _12_ day of November, 2005.

                                        Respectfully submitted,
                                        By the Plaintiff, Pro-Se,


                                        Thomas E. Tyndall


## CERTIFICATE OF SERVICE

I, Thomas E. Tyndall, Pro Se Plaintiff, certify that I caused a copy of the foregoing to be served
to the following by _Certified Mail_ on November _12_, 2005.

        Thomas M. Brockett, Local Counsel for the Defendants
        Robert M. Cheverie & Associates, P.C.
        333 East River Drive
        East Hartford, CT  06108

        United States District Court for the District of Connecticut
        Abraham Ribicoff Building
        Main Street
        Hartford, CT


                                        Plaintiff Pro-Se,


                                        Thomas E. Tyndall