# Certificate of Award

In recognition of your long years of employment, the Board of Trustees, on behalf of your Local Union and your Employer, take great satisfaction in providing you with this document which certifies the pension benefits awarded to you under the Rules and Regulations of the Pension Plan.

## This is to certify that

THOMAS E. TYNDALL

having retired from employment after the requisite years of employment and having met the qualifications established by the Trustees of the Pension Fund for eligibility is entitled to retirement benefits as specified below:

Date of Award    March 9, 1995            Certificate No.    36548

Effective Date of Benefits        FEBRUARY 1, 1995

Pension Type                      REDUCED

_____        _____
Chairman of Employer Trustees      Chairman of Union Trustees

_____        _____
Employer Trustee                    Union Trustee

_____        _____
John R West                         
Employer Trustee                    Union Trustee

_____        _____
Employer Trustee                    Union Trustee

**NEW ENGLAND TEAMSTERS & TRUCKING INDUSTRY PENSION FUND**

<u>FOR THE JANUARY 1995 TRUSTEE MEETING</u>

## APPEAL

<u>THOMAS TYNDALL</u>                    S.S. #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

Present Age: 66                          Local Union: 671
Date of Birth: 1/31/28                   Last Employer: Transamerican Frt.

<u>ISSUE:</u> Reconsideration of service requirements for a pension.

This 66 year old former participant accumulated over 17 years of credited service (12 years/10 months of contributory credit) from 1958 to 1976. A summary of the hours reported on his behalf is attached. As shown, he had continuous service in the Plan through 1970, 5 months of credit in 1972 and 1 month of credit in 1976.

Because he did not earn 6 months of pension credit after age 49, he did not meet the eligibility requirements to a regular-type pension. Because he did not complete 3 years of vesting service after 1970 and did not earn at least 375 hours in 1974, 1975 or 1976, he did not meet the service requirements to a Statutory Pension.

In 1980 and on a number of occasions thereafter, we advised Mr. Tyndall that he had incurred a break in service. However, in response to another inquiry in 1994, it was determined that he had <u>not</u> incurred a Statutory break in service (as defined in Section 6.03 of the Plan) because he had accumulated over 15 years of pension credit and had attained age 52 before incurring a break in service (Section 4.04 of the Plan). Therefore, he was advised that his ineligibility to a pension was due to his failure to meet the above service requirements and not the result of the cancellation of his pension credit due to a break in service.

Mr. Tyndall has appealed the rejection of his claim for a pension. As stated on the attached letter, he is now 66 years old and is not able to return to covered employment. He claims that he would have been able to earn the additional 6 months of pension credit necessary to qualify him to a pension if he had been properly advised of this fact in 1980 rather than being told that he had lost all of his credit due to a break in service.

If the Trustees waive the 6-month after age 49 requirement, he would qualify for a benefit of approximately $256 per month payable at Normal Retirement Age (age 64).

<u>QUESTIONS:</u>

    1. Is there any basis to award Mr. Tyndall a pension benefit?

<u>RECOMMENDATION:</u>

    1. YES - incorrect information regarding break in service.

<u>TRUSTEES' DECISION:</u> Agree ✓_____ Disagree _____ Change _____ Table _____

*Lombard Bros Inc*

Certificate No. 3(548?)
Application No. 34422

Name: Tyndall (Last)   Thomas (First)   E (Middle)

Address: RR 1 - Box 65B - Thetford Center, VT 05075

Social Security No. 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   Local Union No. 677-016

Date of Birth: 1 - 31 - 25 (Month / Day / Year)

Date Application Received: 5/25/90   Last Day of Employment: 1984

Age Attained on Retirement Date: _____

Nature of Proof of Age: Births & Marriage

### SUMMARY OF ANALYSIS

Thomas E. Tyndall qualified for a Reduced Pension of $287 effective 2/1/95 under Benefit Type $375

Options Selected: Husband & Wife 50%

Christmas Benefit: $400 (12/96)   ($144)

Date Approved: Feb 9, 1995   _____ Fund Manager

_____ did NOT qualify for a Pension because:

Date Rejected: _____   Fund Manager

ACTION BY TRUSTEES (if any): awarded pension at 1/95 mtg based on incorrect information given him re Break

SUMMARY SENT: 2/10/95

Revised 1/92

17-1
12-10   $337

Act Adj 2/92 - 1/95
3 yrs = $80.72/mo
CR

January 25, 1995

Mr. Thomas E. Tyndall
R R #1, Box 65B
Thetford Center, VT 05075

    Re: S.S. #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

Dear Mr. Tyndall:

In accordance with your letter of appeal dated October 21, 1994, your claim for benefits was considered by the Board of Trustees at their January 1995 meeting.

After review, the Trustees agreed to waive the requirement of 6 months of pension credit after age 49 and to award you a Reduced Pension commencing February 1, 1995. The amount of your benefit will be that which was payable upon your attainment of Normal Retirement Age (age 64) and actuarially increased to reflect the number of months beyond Normal Retirement Age for which benefits have not been paid.

Based on this decision, we are pleased to advise that you are eligible to receive a Reduced Pension of $337 per month payable as a single-life annuity. This amount will be reduced to $287 based on your election of the 50% Husband and Wife form of payment.

The formal notification of your pension approval will be sent to you shortly under separate cover. Based on your earlier election, your benefit will be paid in the 50% Husband and Wife form of pension. If you and your spouse wish to reject this form of pension, please advise us immediately and the necessary form will be sent to you. In addition, please advise us if you wish to elect the Lump Sum option. If elected, your monthly benefit will be reduced by 10% in exchange for a one-time, lump sum payment which will be equal to $101 for each $1 withheld from your pension.

If you have any questions on this matter, please do not hesitate to contact this office. Please direct all inquiries to our Pension Department.

Very truly yours,

Charles Langone
Fund Manager

CL:jlm

**NEW ENGLAND TEAMSTERS & TRUCKING INDUSTRY PENSION FUND**



535 Boylston Street
Boston, Massachusetts 02116-3770
Tel. 617-266-8900
Fax 617-247-8188

Toll Free Telephone Nos.
Mass. Only 800-322-1216
Out of State 800-447-7709

"Advice about claims, benefits, eligibility or status of participants is based on the present rules of the Fund which are subject to change without notice."

# NEW ENGLAND TEAMSTERS & TRUCKING INDUSTRY PENSION FUND

535 BOYLSTON STREET • BOSTON, MASSACHUSETTS 02116-3770
TELEPHONE 617-266-8900 • FAX 617-247-8188
TOLL FREE TELEPHONE NUMBERS: MASS. ONLY ► 800-322-1216 • OUT OF STATE ► 800-447-7709

## NOTIFICATION OF PENSION APPROVAL

Thomas E. Tyndall
RR1 BOX 65B
Thetford CTR, VT 05075

Date: February 9, 1995
Soc. Sec. No. 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
Certificate No. 36548

Dear Participant:

We are pleased to inform you that your application for benefits has been approved and you are eligible for the following pension:

TYPE: REDUCED                    EFFECTIVE DATE: FEBRUARY 1, 1995

This effective date is guaranteed only if the signed Retirement Declaration and Signature Card are received in this office no later than twenty (20) days after the date of this Approval Notice. Based on your election(s), your pension will be paid as follows:

| | | |
|---|---|---|
| Single-Life Annuity | | Monthly benefit for your lifetime only. |
| Husband and Wife Pension | $287 | Monthly benefit for your lifetime. |
| | $144 | Monthly benefit for your qualifying spouse following your death. |
| 120 Certain Payments | | Monthly benefit for your lifetime; if you die before receiving 120 payments, your designated beneficiary will receive balance of payments up to 120. |
| Lump Sum | Not Elected | One time payment. (See Notice on Tax Withholding) |
| Christmas Benefit | $0 | Payable in December of first year of retirement. |
| | $400 (1996) | Amount payable each succeeding December. |

We are enclosing an explanation of the Federal and State (if you are a Massachusetts resident) Tax Withholding requirements. Please read this material carefully and follow the detailed instructions.

You must sign and return the enclosed Signature Card and one copy of the Retirement Declaration. Sign the Card exactly as you intend to endorse your monthly checks. Keep the second copy of the Retirement Declaration for future reference. PAYMENT OF YOUR PENSION WILL NOT START UNTIL THESE DOCUMENTS ARE RETURNED TO THIS OFFICE. The enclosed Notice of Employment should be completed and returned to us if you plan to engage in any type of employment after the effective date of your pension as stated above.

Your first pension check will be sent to your Local Union for distribution to you. We join with your Local Union, Employer and fellow employees in extending our best wishes during your years of retirement, which we hope are many and enjoyable.

cc: Local 671

Very truly yours,

BOARD OF TRUSTEES

By *Charles Langone*

Charles Langone, Fund Manager

Enclosures
Rev. 3/94

March 30, 2001

Board of Trustees
New England Teamsters & Trucking Industry
Pension Fund
535 Boylston Street
Boston, MA 02116

Re:   *Thomas E. Tyndall*
      *Pension Number 34422*

Gentlemen,

My name is Thomas E. Tyndall, and I am presently receiving a pension from the New England Teamsters pension fund. I am writing to apprise you of two concerns I have regarding my pension benefit, and ask that you address these at your upcoming meeting tentatively scheduled for May, 2001. My concerns are as follows:

## I. *Back Payments Due Me*

I formally applied for my pension on May 25, 1990, and herewith enclose a copy of my application receipt. By letter of May 29, 1990 addressed to me by Margaret Hurst, pension department supervisor (a copy of which is enclosed), I was advised that I would receive a response after my social security records were received and examined. The response I received was that my application for a reduced pension was denied.

The denial of benefits was due to an alleged break in service during the term of my employment. Specifically, this decision was based upon a failure to satisfy the provisions of sections 404 and 6.03B of the regulations as codified in the pension fund booklet, wherein it is stated that a break in service occurs when a participant fails to earn eight months of pension credit during a six year period.

Through my own research, I was able to determine that this decision was in error. In fact, it is further defined in both regulations that when a participant has accumulated at least 5,000 hours of service paid into the fund, there will be no break in service. As you will note from the enclosed letter, my hours of service totaled 26,206. Furthermore, it is stated in sections 404B and 404C that a participant with at least 15 pension credits who is 52 years of age or older, cannot suffer a break in service. These requirements had already been satisfied. I enclose herewith a copy of a letter from Helen Debreceni, pension fund manager, dated July 12, 1990, stating that prior to any alleged break in service, I was credited with seventeen years and one month of service, from 1953-1977.

Board of Trustees
March 30, 2001
Page 2

Due to this error, my pension application was not granted until February 1, 1995. Although nearly five years had passed, this was granted based upon the information provided in my application of May 25, 1990. Had my application been properly reviewed and researched when made, it should have been granted as of August, 1990. I believe, therefore, that I am entitled to receive pension benefits for the period of August 1, 1990 through February 1, 1995. But for the error on the part of the pension fund staff, and the misleading information on which its decision at the time was predicated, I would have received pension benefits for this period.

The total sum I am seeking for this period is $15,336.00. The period consists of 54 months, times my monthly benefit rate of $284.00. Please consider this issue at your upcoming meeting scheduled in May.

## II. *Credits Denied Me*

My second concern is the denial to allow me pension credits for my service years of 1951, 1952 and 1954. During those years I was an employee of Trudon & Platt Motor Lines of Bristol, Connecticut. In a letter dated April 6, 1995, pension fund manager Charles Langone stated that *"employment with Trudon & Platt Motor Lines is not recognized for past service credit purposes since this company did not sign an agreement with Local 677 after 1954 and never became a contributing employer in this fund."* A copy of this letter is attached.

First, I question whether Trudon & Platt Motor Lines failed to sign the collective bargaining agreement in 1958 that introduced the pension fund for teamster members. It is my understanding that a National Master Freight Agreement was signed by Trudon & Platt in New York in 1958, and that the agreement with Local 677 was essentially the same in content. Trudon & Platt trucks continued to service Waterbury and other points in Connecticut, something that Jimmy Hoffa, Sr., and other union officials would not have allowed without the signing of the local collective bargaining agreement. In that era, no company operated union on one end and non-union on the other, as its freight would have been considered "hot cargo", and would have been refused.

Second, as a signatory of the National Master Freight Agreement, Trudon & Platt did contribute to a pension fund on behalf of its teamster employees. This was the criteria necessary to receive retroactive pension credit for service years pre-dating the 1958 agreement. I enclose herewith a copy of a letter from Local 707 Road Carriers Welfare & Pension Fund evidencing such contributions by Trudon & Platt. Under these circumstances, I believe all Trudon & Platt employees who, as I, were Teamsters during the years retroactive pension credit is sought, should be treated equally in the application of these credits for pension purposes.

Board of Trustees
March 30, 2001
Page 3


  Finally, as a Trudon & Platt employee in 1955 I participated in a work stoppage called by Local 677 against Trudon & Platt for its failure to pay wages in accordance with the collective bargaining agreement then in effect. Before the issue could be presented at arbitration, I and two of my colleagues were fired. In November, 1955, the arbitrator ruled in favor of the union, and ordered that the striking workers be returned to work, and be paid all back wages and past due benefits. Trudon & Platt refused to honor the arbitrator's decision, and the union filed a lawsuit to enforce the award in Superior Court (docket no: 83756, New Haven Superior Court, the Honorable Raymond Devlin presiding).

  The Superior Court upheld the arbitrator's decision, and Trudon & Platt unsuccessfully appealed that decision. In November, 1958, the Connecticut Supreme Court upheld Judge Devlin's ruling, and mandated that the orders be placed in effect (146 Conn. 17, 1958). This decision was rendered eight months after the inception of the Teamsters pension fund. The Court's mandate of making the workers whole, would have included at that time the payment of pension benefits accruing since the pension fund began, and the retroactive application of pension credits for applicable past years of service.

  For the aforementioned reasons, I believe I am entitled to pension credits for my years of service as a Teamster member and Trudon & Platt employee in 1951, 1952 and 1954. I calculate this benefit to be $9,878.40, based upon the following:

- $337.00 total present monthly pension benefit rate
- $4,444.00 annual benefit rate (includes $400.00 Christmas benefit)
- 205 months total pension credits (17 years 1 month)
- $21.678 monthly benefit rate ($4,444.00 divided by 205)
- $78.40 monthly rate due me ($21.678 x 36 months, for 1951, 1952, 1954)
- $9,878.40 total due for August 1, 1990 through February 1, 2001

  The total due for the satisfaction of both pending issues is $25,214.40, plus a continued increase in my monthly benefit of $78.40 for March 1, 2001 and thereafter. Once again, I ask that you seriously consider my concerns, and afford them your sincere attention at the upcoming May, 2001 meeting of the Board.

Board of Trustees
March 30, 2001
Page 4


      Should you have any questions, please do not hesitate to contact me. I look forward to your prompt response. Thank you for your attention and consideration.

                                            Sincerely,

                                            Thomas E. Tyndall
                                            Pension #34422
                                            P.O. Box 23
                                            Burgess, VA 22432
                                            (804) 761-3561

TET/
Encs.
cc:    Harold Kastle, Pension Assistance Project
       Gerontology Institute
       100 Morrissey Boulevard
       Boston, MA 02125



**NEW ENGLAND TEAMSTERS & TRUCKING INDUSTRY PENSION FUND**
535 BOYLSTON STREET • BOSTON, MASS. 02116

10218650  5-13/110
PA10218650

CHRISTMAS BENEFIT 1991-1995 & ADJT FOR 1999 & 2000

PAY TO THE ORDER OF
THOMAS E TYNDALL
PO BOX 6041
WOLCOTT CT 06716

SOCIAL SEC. NO. 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

AMOUNT $**2400.00
VOID AFTER 90 DAYS

OCT. 04, 2001
LOCAL # 677

PENSION BENEFIT CHECK


Fleet Bank
Boston, Massachusetts 02109

⑈10218650⑈ ⑉011000138⑉ 9363499753⑈

FUND MANAGER

---



**NEW ENGLAND TEAMSTERS & TRUCKING INDUSTRY PENSION FUND**
535 BOYLSTON STREET • BOSTON, MASS. 02116

10218649  5-13/110
PA10218649

RATE ADJT. 8/1990 - 10/2001

PAY TO THE ORDER OF
THOMAS E TYNDALL
PO BOX 6041
WOLCOTT CT 06716

SOCIAL SEC. NO. 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

AMOUNT $**6402.00
VOID AFTER 90 DAYS

OCT. 04, 2001
LOCAL # 677

PENSION BENEFIT CHECK


Fleet Bank
Boston, Massachusetts 02109

⑈10218649⑈ ⑉011000138⑉ 9363499753⑈

FUND MANAGER

# New England Teamsters and Trucking Industry Pension Fund

## Restated Agreement and Declaration of Trust

DATED
APRIL 11, 1958

Reprinted as of
November 1, 1962

Restated and reprinted
as of August 2, 1982

The Trustees may from time to time consult with the Trust's legal counsel and shall be fully protected in acting upon such advice of counsel to the Trust as respects legal questions.

*Section 7.* BOOKS OF ACCOUNT. The Trustees shall keep true and accurate books of account and records of all their transactions, which shall be available upon reasonable notice for inspection by signatories to this agreement at the principal office of the Fund.

*Section 8.* EXECUTION OF DOCUMENTS. The Trustees may authorize an Employer Trustee and a Union Trustee or any joint group equally composed of Employer and Union Trustees to execute jointly any notice or other instrument in writing and all persons, partnerships, corporations, or associations, may rely thereon that such notice of instrument has been duly authorized and is binding on the Fund and the Trustees.

*Section 9.* DEPOSIT AND WITHDRAWAL OF FUNDS. All monies received by the Trustees hereunder shall be deposited by them in such bank or banks as the Trustees may designate for that purpose and all withdrawals of monies from such account or accounts shall be made only by checks signed by the Trustees authorized in writing by the Trustees to sign such checks. Except as hereinafter provided, no check shall be valid unless signed by two persons of whom one shall be a Union Trustee and one an Employer Trustee.

The Employer Trustees shall designate in writing the name or names of any Employer Trustee who may sign checks in the above manner, and the Union Trustees shall likewise designate in writing the name or names of the Union Trustees who may sign checks in the above manner.

The Trustees may, in their discretion, designate and authorize an employee of the Fund to sign checks upon such separate and specific bank account or bank accounts as the Trustees may designate and establish for such purpose.

*Section 10.* SURETY BONDS. The Trustees and any employees of the Trustees who are empowered and authorized to sign checks as aforesaid shall each be bonded by a duly authorized surety company in such amounts as may be determined from time to time by the Trustees. Each such employee employed by the Trustees who may be engaged in handling monies of the Trust Fund shall also be bonded by a duly authorized surety company in the same manner. The cost of the premium on such bonds shall be paid out of the Fund.

*Section 11.* REPORTS TO EMPLOYERS AND UNIONS. The Trustees may, in their discretion at any time and from time to time, but not less frequently than once each year, render written accounts of their transactions in such form as they deem appropriate and shall file the same with the Employers and the Unions. Each such Employer and Union and the Employees and their beneficiaries involved shall be deemed to have approved any such account unless it or they shall file with the Trustees written objections thereto within sixty days after receipt of such account, and in the absence of such objection, the Trustees shall be released, relieved and discharged with respect to all matters and things set forth in such account as though the same had been settled by the decree of a court of competent jurisdiction.

## ARTICLE V.

## CONTRIBUTIONS TO THE FUND

*Section 1.* RATE OF CONTRIBUTIONS. In order to effectuate the purposes hereof, each Employer shall contribute to the Fund the amount required by the Collective Bargaining Agreement between the Local Union and the Employer. The rate of contribution shall at all times be governed by the aforesaid Collective Bargaining Agreement then in force and effect, together with any amendments, supplements or modifications thereto. For this purpose, those Employees of Employers, as defined in Article I, Section 1, 2nd paragraph herein, as amended, other than those who are covered by a collective bargaining agreement, shall have contributions paid on their behalf by said entities on account of their said full time salaried employees at the same rate as is required for Employers subject to the applicable provisions of the New England Supplemental Freight Agreement.

*Section 2.* EFFECTIVE DATE OF CONTRIBUTIONS. All contributions shall be made as required by the Collective Bargaining Agreement and shall continue to be paid as long as the Employer is so obligated pursuant to the Collective Bargaining Agreement with the Local Union or until he ceases to be an Employer within the meaning of this Trust Agreement as hereinafter provided.

*Section 3.* MODE OF PAYMENT. All contributions shall be payable to the Fund and shall be paid in the manner and form determined by the Trustees. The detailed basis of such payment is more specifically set forth in the Standard Form of Participation Agreement, hereto attached as Appendix "A".

*Section 4.* DEFAULT IN PAYMENT. Nonpayment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments. In accordance with Sec. 502(g) (2) of Employee Retirement Income Security Act of 1974, as amended, the Trustees do establish the rate of interest to be paid by employers on delinquent contributions to be the rate prescribed under Sec. 6621 of the Internal Revenue Code of 1954 (currently 12% per annum); and further, liquidated damages shall be assessed in an amount of 20% of the amount of the delinquency, or such higher percentage as may be permitted under Federal or State law, plus reasonable attorneys' fees and costs of the action.

5

The Trustees may take any action necessary to enforce payment of the contributions due hereunder, including but not limited to, proceedings at law and in equity.

*Section 5.* REPORT ON CONTRIBUTIONS. The Employers shall make all reports on contributions required by the Trustees. The Trustees may at any time have an audit made by independent certified public accountants of the payroll and wage records of any Employer in connection with the said contributions and/or reports.

*Section 6.* PAYROLL AUDIT. The Trustees may audit an Employer's payroll and employment records regardless of whether at the time he is a current contributing Employer.

*Section 7.* REFUND OF CONTRIBUTIONS. Recognizing the need to protect the Fund from receipt of payment of contributions on behalf of ineligible persons, and also to protect the Fund from unjustified and detrimental delay by employers who are seeking refunds, it is hereby declared and determined that no refund of a contribution shall be made unless application in writing has been received by the Fund office within one year after the payment of the contribution which is sought to be returned.

Nothing in this provision shall preclude the refund of contributions beyond said one year limitation should the Trustees determine that said contributions were paid in good faith and under a mistake of fact or law.

## ARTICLE VI.

## PLAN OF BENEFITS

*Section 1.* BENEFITS. The Trustees shall have full authority to determine all questions of the nature, amount and duration of benefits to be provided based on what it is estimated that Fund can provide without undue depletion or excessive accumulation, provided, however, that no benefits other than pension or retirement benefits may be provided for or paid under this Trust Agreement.

*Section 2.* RECIPIENTS OF BENEFITS. Benefits may be provided in accordance with Section 1 of this Article for any Employee (or his beneficiaries) of a contributing Employer covered by a Collective Bargaining Agreement between the Employer and the Local Union or any other agreement requiring contributions to the Fund.

*Section 3.* ELIGIBILITY REQUIREMENTS FOR BENEFITS. The Trustees shall have full authority to determine eligibility requirements for benefits and to adopt rules and regulations setting forth same which shall be binding on the employees and their beneficiaries.

*Section 4.* METHOD OF PROVIDING BENEFITS. The benefits shall be provided and maintained by such means as the Trustees shall in their sole discretion determine.

*Section 5.* WRITTEN PLAN OF BENEFITS. The detailed basis on which payment of benefits is to be made pursuant to this Trust Agreement shall be specified in writing by appropriate action of the Trustees subject, however, to such changes or modifications as the Trustees from time to time in their discretion may determine. All such changes or modifications shall similarly be specified in writing by appropriate resolution of the Trustees.

*Section 6.* APPROVAL OF PLAN. The Pension Plan adopted by the Trustees shall be such as will qualify for approval by the Internal Revenue Service, U.S. Treasury Department, and will continue as a qualified plan, so as to insure that the employer contributions to the Pension Fund are proper deductions for income tax purposes. The Trustees are authorized to take any action and to make whatever applications are necessary to the Internal Revenue Service in order to receive and maintain approval of the Pension Plan as a qualified plan.

*Section 7.* EMPLOYER'S LIABILITY. The financial liability of a contributing employer to the Fund shall be determined by the applicable collective bargaining agreement and the terms and provisions of all applicable laws including the Employee Retirement Income Security Act of 1974 and the Multiemployer Pension Plan Amendments Act of 1980.

## ARTICLE VII.

## MEETINGS AND DECISIONS OF TRUSTEES

*Section 1.* OFFICERS OF TRUSTEES. The Trustees shall meet as promptly as possible after the execution of this Trust Agreement and the Employer and Union Trustees shall each elect a Chairman for their group who shall serve as Co-Chairmen for the Fund. The Co-Chairmen shall continue in office until replaced by the Employer or Union Trustees, respectively.

*Section 2.* MEETINGS OF TRUSTEES. Meetings of the Trustees shall be held at such place or places as may be determined by either Co-Chairman and may be called by either Co-Chairman upon ten (10) days' written notice to the other Trustees and may be held at any time without such notice if all the Trustees consent thereto in writing. Meetings shall be held at least annually.

6