UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS E. TYNDALL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NEW ENGLAND TEAMSTERS & TRUCKING )<br>INDUSTRY PENSION FUND, )<br>DAVID W. LAUGHTON, PAUL V. WALSH, )<br>ANTHONY S. BONPANE, GEORGE W. )<br>CASHMAN, J. LEO BARRY, JOHN J. )<br>MCCARTHY, JR., WILLIAM M. VAUGHN III, )<br>and J. DAWSON CUNNINGHAM, )<br>)<br>Defendants. ) | Case No. 3:03cv194(CFD) |

## AFFIDAVIT OF THOMAS E. TYNDALL

I, Thomas E. Tyndall, under oath and based upon my personal knowledge, do hereby depose and state the following:

1. My name is Thomas E. Tyndall, and I am the plaintiff in the above-captioned proceeding, which I am doing Pro Se.

2. Prior to my retirement I was employed as a truck driver with employers who were contributing members to the New England Teamsters & Trucking Industry Pension Fund – Plan, one of the named Defendants to this proceeding.

3. In 1990, following my retirement, I made application to the pension fund for my pension. My application for pension benefits was denied by fund officials.

4. In October 1994, I reapplied to the board of trustees for a pension, and my application was granted effective February, 1995. My monthly pension benefit was $287.00.

5. On March 30, 2001, I wrote to the Board of Trustees to advise them, in part, that I believed their decision in denying my original application was in error, and that I was entitled to benefits for the period of August, 1990 through but not including February, 1995.

6.      In my letter of March 30, 2001, I did not ask that the effective date of my eligibility for a pension be modified and made retroactive to August, 1990, nor did I ask that my benefit rate be reduced. (Exhibit #7)

7.      In August, 2001, the board of Trustees agreed to my asking for back payments, and awarded me a lump sum of benefits for the period of August, 1990 through January, 1995. This lump sum award was paid to me in October, 2001. (Exhibit #9)

8.      These checks were paid without interest. This is why I am asking the Court to allow for summary judgment in favor of Plaintiff of Part Two (2) of this instant law suit (3:03cv194(CFD).

9.      I have since the year 1980, (25 years ago,) been trying to get the proper pensions I was promised by The New England Teamsters and Trucking Industry Plan – Fund starting in 1958, at the inception of the plan.

10.     During these 25 years I and the Trustees have been told false statements, misinformation and fraudulent information pertaining to my pension by Officials of the Pension Fund.

11.     When I sent to the Trustees my appeal letter in October, 1994, they (the Trustees) did override all the false statements, misinformation and fraudulent information presented to them by the Fund Officials and granted a pension effective February 1, 1995.(Exhibit #6)

12.     Though I did not have the full qualifications for a pension (I lacked the six(6) months after age 49), the Trustees waived the six(6) month after age 49 portion because I had been told I had had a break in service and had lost all of my pension credits. The Trustees noted in their finding that I could have accumulated the six(6) months had I been told the truth, instead of all the misinformation in the letters from Pension Supervisor Margaret Hurst (Exhibits #2 and #3) and the letter from Helen Debricini, Fund Manager (Exhibit #4).

13.     Now that I have surmounted all the false information, misinformation, and fraudulent letters from the Pension Fund Officials and finally am receiving a pension, though not what I was promised in all the plans the Fund distributed to the participants. I now have a new Pension Fund Official trying to put stumbling blocks in the way to a proper pension.

14.     The new Official is the Fund Manager Charles Langone. Mr. Langone has stated the plaintiff Thomas Tyndall was not <u>disabled</u> in year 1990. How Mr. Langone has ascertained that Plaintiff Thomas Tyndall was or was not disabled is something of a puzzle. There is no mentions of disability in Plaintiff's application for pension. Nor in any other filing has plaintiff asserted that he was disabled. Obviously Mr. Langone made the aforementioned statement after reading Plaintiffs Letter of Appeal (exhibit #5), wherein Plaintiff stated that he was being treated for an old spine injury which happened during plaintiff's service in the U.S. Army during World War Two.

15. When Fund Manager Charles Langone Mentioned the word disabled Defense Council Jonathan Conti jumped right on that word disabled and attempted to incorporate into this instant suit. Plaintiff responded immediately refuting the mentioning of any disability. (Exhibit #14)

16. Now Plaintiff is faced with motions, affidavits, memos, etc. which the Plaintiff has requested the Court to strike because the same were not served on both the Court and the Plaintiff at the same time and in the same amount.

17. To top off these different motions, etc, now both the Defense Council, Jonathan Conti, and Charles Langone have submitted affidavits that are not completely true. Langone submits an affidavit with a false address and Conti tells in his affidavit about mailing papers to the Court and the Plaintiff which he did not do. He also states that the "U.P.S." does not accept overnight mailings to Post Office Box Numbers which is false. The Post Office does accept overnight mail to Post Office Boxes.

18. Because of and in spite of these false informations sent to the Court and Plaintiff, Plaintiff Thomas Tyndall Pro Se does ask of this Court to grant unto the Plaintiff a Judgment in his favor for the interest on the back payments Plaintiff received from the Pension Fund and any other legal costs that Plaintiff is Due.

Respectfully,

Thomas Tyndall

Egidio D. Mazzer 11/11/05 NOTARY

My Commission Exp. 11/30/06