UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS E. TYNDALL,          : | |
|     Plaintiff,          : | |
| : | |
| v.          : | No. 3:03 CV 194 (CFD) |
| : | |
| NEW ENGLAND TEAMSTERS &          : | |
| TRUCKING INDUSTRY PENSION          : | |
| FUND, ET AL.,          : | |
|     Defendants.          : | |

**RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT**

The plaintiff, Thomas E. Tyndall ("Tyndall") brought this action pro se against the New England Teamsters and Trucking Industry Pension Fund ("Pension Fund"), David W. Laughton, Paul V. Walsh, Anthony S. Buonpane, George W. Cashman, J. Leo Barry, John J. McCarthy, Jr., William M. Vaughn III, and J. Dawson Cunningham (collectively, the "Trustees") alleging that the Trustees of the Pension Fund have miscalculated and wrongfully withheld payment of Tydall's pension benefits, which are regulated by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.[1]  Count One alleges that the Trustees wrongfully reduced Tyndall's monthly benefit rate from $284 to $218.  Count Two alleges that the Trustees wrongfully withheld interest on a lump sum award of retroactive benefits.  On April 29, 2004, the Court granted the defendants' motion for partial summary judgment as to Count One.  The parties have filed cross-motions for summary judgment as to Count Two.

---

[1] The complaint was originally filed in state court, but was properly removed by the defendants pursuant to 28 U.S.C. §§ 1441(a), (b) and 28 U.S.C. § 1446.  This Court has jurisdiction under 29 U.S.C. § 1132(e).

**I.     Facts[2]**

Tyndall is a participant in the New England Teamsters and Trucking Industry Pension Plan ("Pension Plan"). In 1980 when he was approximately fifty-two, Tyndall inquired about his eligibility for pension benefits and was informed by the Fund that he was ineligible because he had a break in service before becoming vested.[3] In fact, Tyndall had fully vested in the Pension Plan before his break in service and was only ineligible for benefits because he had failed to work an additional six months after reaching the age of forty-nine. Despite being misinformed that he had never vested in the Pension Plan, in May 1990, Tyndall filed an application for a pension with an intended retirement date of July 1, 1990. In a letter dated July 12, 1990, the Pension Fund informed him that his application had been denied because of his break in service. On October 27, 1994, Tyndall filed an appeal with the Pension Fund.

In January 1995, the Trustees reviewed Tyndall's appeal and acknowledged that Tyndall had fully vested in the Pension Plan and was only ineligible because of his failure to work six months after the age of forty-nine. Section 5.02(b) of the Plan states that in order to be eligible for a pension, a participant must "[h]ave at least 6 months of Pension Credit during the contribution period after attaining age 49."

Because Tyndall might have worked the extra six months if he had not been misinformed that he had lost all of his pension credits during his break in service, the Trustees reversed their earlier decision and voted to award Tyndall a pension benefit. Tyndall's effective retirement date

---

[2]The following facts are taken from the parties' Local Rule 56 Statements and related documents. They are undisputed except where indicated.

[3] The parties disagree about whether Tyndall's 1980 correspondence was an application for pension benefits.

was set as February 1, 1995 and his monthly pension benefit was approximately $287 per month.

In a letter dated March 30, 2001, Tyndall wrote to the Pension Fund to request back payments. In August 2001, the Trustees decided Tyndall's request and voted to change his effective retirement date from February 1, 1995 to August 1, 1990.

On August 24, 2001, Fund Manager Charles Langone ("Langone") sent Tyndall a letter informing him that the Pension Fund had completed its calculation of his benefit and that if Tyndall chose to accept the earlier effective date of August 1, 1990, he would receive $6,392 in a lump sum payment for retroactive benefits, plus a payment of $2,400 in Christmas checks. In addition, Langone informed Tyndall that, if he chose that option, his monthly benefit would be reduced from $284 to $218 per month due to the elimination of an actuarial increase that had been added to his pension when his effective date had been February 1, 1995. Langone explained that the actuarial increase was no longer applicable because the new earlier effective retirement date would be prior to Tyndall's attainment of the Normal Retirement Age of 64.[4] Tyndall was offered a choice: (1) elect to change his benefit commencement date to August 1, 1990, receive a total retroactive payment of $8,792, and receive a monthly benefit of $216 starting September 1, 2001; or (2) elect not to change his benefit commencement date, not receive the retroactive payment, and continue receiving a monthly benefit of $284.[5]

On September 18, 2001, Tyndall completed the form attached to Langone's letter and selected the first option. On October 4, 2001, Langone sent Tyndall a letter enclosing a check in

---

[4] Tyndall would have been 62 in August 1990.

[5] In a letter dated September 5, 2001, Langone clarified that under the first option, Tyndall's new monthly benefit would be $218, not $216.

3

the amount of $6,402 for the adjustment of his benefits for the months of August 1990 through October 2001, as well as a check in the amount of $2,400 representing the adjustment to his Christmas benefit. The monthly benefit was also adjusted to $218 per month.

On December 7, 2001, Tyndall filed an appeal with the Pension Fund, requesting that his monthly benefit be reinstated to $284 per month. In March 2002, the Trustees heard Tyndall's appeal and voted not to increase Tyndall's monthly benefit. On April 18, 2004, Tyndall requested that interest be added to his retroactive benefit payment because "these amounts were paid to me years after my entitlement to them." In May 2002, the Trustees heard Tyndall's request for interest and voted not to award interest. This action followed.

On July 14, 2003, the defendants filed a motion for partial summary judgment as to Count One, which alleged that Tyndall's benefits had been wrongfully reduced as the result of an amendment to the Plan. On April 29, 2004, the Court found that Tyndall's benefits were reduced as the result of a recalculation of his benefits, not because of an amendment to the Plan and granted the defendants' motion for summary judgment on Count One.

## II.  Summary Judgment Standard

In the context of a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Miner v. Glens Falls, 999 F.2d 655,

661 (2d Cir. 1993) (internal quotation marks and citation omitted).  In ruling on a motion for summary judgment, however, the Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992).  Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991), cert. denied, 502 U.S. 849 (1991); see also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992).  In addition, because Tyndall is proceeding pro se, the Court will read his pleadings "liberally and interpret them to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (citation and internal quotation marks omitted).[6]

**III.    Discussion**

Tyndall alleges that the Pension Fund wrongfully refused to pay interest on the back payments awarded to the Plaintiff by the Trustees in October 2001.  The defendants contend Mr.

---

[6]Tyndall's responses to the defendants' supplemental motion for summary judgment indicate that he understands "the nature and consequences of summary judgment and the need to set forth all available evidence demonstrating a genuine dispute over material facts." Sawyer v. Am. Fed'n of Gov't Employees, 180 F.3d 31, 34-35 (2d Cir. 1999) (internal quotation marks omitted).  In response to the previous motion for partial summary judgment, Tyndall filed a Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment [Doc. #17], Local Rule 56a(2) Statement [Doc. #18], an Affidavit [Doc. #19], and a Response to Defendants' Reply Memorandum in Support of its Motion for Partial Summary Judgment [Doc. #21].  In response to the supplemental motion for summary judgment Tyndall filed a Motion to Strike with a supporting memorandum of law, affidavit, and statement of facts [Doc. #47] as well as his own cross-motion for summary judgment and supporting documents.  The arguments contained in Tyndall's submissions demonstrate that he understands the nature and consequences of the defendants' supplemental motion for summary judgment and his burden to produce evidence opposing the motion.

Tyndall was not entitled to benefits when he applied in 1990, that the Plan does not require interest on retroactive pension benefits, and that the Trustees' actions were not arbitrary or capricious.

    **A.    Standard of Review**

Under ERISA, a pension plan participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A denial of benefits challenged under this provision is reviewed *de novo* unless the pension plan gives the fiduciary or plan administrator discretion to determine eligibility for benefits. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). "[W]here the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995) (citations omitted). It is the administrator's burden to show that this deferential review applies. Kirk v. Readers Digest Ass'n, Inc., 57 Fed. Appx. 20, 23 (2d Cir. 2003).

    The Pension Fund was initially established pursuant to an Agreement and Declaration of Trust dated April 11, 1958, which has been restated as of January 26, 1994 (the "Trust Agreement"). The Pension Plan and the Trust Agreement in effect at the relevant times for this action[7] undoubtedly conferred discretionary authority to the Trustees so as to trigger the "arbitrary and capricious" standard as to certain matters. For example, the Trust Agreement

---

[7]Pension Plan rules and regulations effective October 1, 1976, as amended through October 30, 1985; Trust Agreement dated January 26, 1994.

6

confers upon the Trustees discretionary authority to determine eligibility for benefits. Article VI, Section 3 of the Trust Agreement provides that "the Trustees shall have full discretionary authority to determine and interpret eligibility requirements for benefits and to adopt rules and regulations setting forth same which shall be binding on the employees and their beneficiaries and dependents." In addition, Article VI, Section 4 provides that "[t]he benefits shall be provided and maintained by such means as the Trustees shall in their sole discretion determine." Moreover, Article VIII, Section 8.03 of the Pension Plan states that "[t]he Trustees shall be the judges of the standard of proof required in any case and of the application and interpretation of this Plan, and the decisions of the Trustees shall be final and binding on all parties, subject to appeal under Section 8.04." Here, the discretion exercised by the Trustees included the determination of the methods for making Tyndall whole following their 1995 decision granting Tyndall's request for pension benefits. Accordingly, the Court will review the Trustees' actions in this case under an "arbitrary or capricious" standard.

      B.     **Arbitrary or Capricious**

Under an "arbitrary or capricious" standard, courts may "overturn a decision to deny benefits only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." Pagan, 52 F.3d at 442 (citations and quotation marks omitted). District courts are required to consider whether the Trustees' decision was "based on a consideration of the relevant factors and whether there has been a clear error of judgment," but may not "upset a reasonable interpretation" by the Trustees. Zuckerbrod v. Phoenix Mut. Life Ins. Co., 78 F.3d 46, 49 (2d Cir. 1996) (citation and quotation marks omitted).

      1.     **Tyndall's Claim of Interest on Retroactive Benefits**

In light of Tyndall's pro se status, and because it does not affect the outcome, the Court will assume that Tyndall claims interest under an implied term of the Pension Plan pursuant to ERISA § 502(a)(1) and, in the alternative, the equitable remedy of disgorgement of profits to prevent unjust enrichment pursuant to ERISA § 502(a)(3).

    a.    **Interest under the Explicit or Implied Terms of the Plan**

ERISA § 502(a) provides that: "A civil action may be brought--(1) by a participant or beneficiary–. . .(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C.A. § 1132.  Beneficiaries may sue under ERISA § 502(a) for violation of both explicit and implied Plan terms.  Dobson v. Hartford Financial Services Group, Inc., 389 F.3d 386, 395 (2d. Cir. 2004) (tentatively noting in dicta that a Plan's silence on the issue of whether interest was due on late paid benefits more likely implied that interest was due than that it was not due).

Tyndall's Pension Plan does not contain an explicit term requiring the Fund to pay interest on retroactive benefits.  Tyndall points to a number of provisions that he claims suggest that the Plan contains an implied term requiring interest on such benefits.  In particular, the Plan contains terms allowing the Trustees to recover interest on benefit overpayments made as a result of false information provided by beneficiaries and to charge interest and penalties to employers who default on making payments to the Fund.  However, even if the Court were to find that the Pension Plan included an implied term permitting interest payments, Tyndall has not presented any evidence that suggests the Trustees' decision to deny interest was arbitrary and capricious.  Tyndall was not entitled to benefits under the terms of the Plan until the Trustees waived the six-

months work requirement.[8] Accordingly, under the terms of the Pension Plan, Tyndall was not entitled to benefits until 1995 and no interest could have accrued between 1990 and 1995. Further, the Plan requires beneficiaries to apply for benefits two months prior to the date on which they would like to begin receiving benefits (Section 8.01), and to appeal benefits decisions within 90 days (Section 8.04). Tyndall did not request retroactive payment of his benefits until 2001, and the benefits were paid promptly after his request. Under the terms of the Plan, Tyndall was not entitled to benefits until he applied for them. In light of Tyndall's failure to appeal the 1990 denial of benefits in a timely manner, and his failure to request retroactive benefits in a timely manner the Trustees were acting well within their discretion when they denied Tyndall's request for interest payments.

  b.  **Equitable Relief under ERISA § 502(a)(3)(B)**

ERISA § 502(a) provides:

> A civil action may be brought - . . .
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violated any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

---

[8] While it might arguably have been a breach of the Trustees' fiduciary duty to refuse to waive the six-months work requirement after leading Tyndall to believe that he could do nothing to regain his pension credits, Tyndall would not have been able to recover under such a theory. ERISA § 502(a)(2) allows a cause of action for breach of fiduciary duty in connection with administering the benefits plan. See 29 U.S.C. § 1132(a)(2). However, a § 502(a)(2) claim must "be brought in a representative capacity on behalf of the plan as a whole." Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 n. 9, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Tyndall's hypothetical claim would seek to recover only the benefits to which he was entitled individually, and would thus be dismissed. See Lee v. Burkhart, 991 F.2d 1004, 1009 (2d Cir.1993) (citing Russell and dismissing a § 502(a)(2) cause of action "because plaintiffs are seeking damages on their own behalf, not on behalf of the Plan.").

29 U.S.C. § 1132(a).

> In Mertens v. Hewitt Associates, the Supreme Court of the United States stated:
>
> Since all relief available for breach of trust could be obtained from a court of equity, limiting the sort of relief obtainable under § 502(a)(3) to "equitable relief" in the sense of "whatever relief a common-law court of equity could provide in such a case" would limit the relief not at all. We will not read the statute to render the modifier ["equitable"] superfluous.

508 U.S. 248, 257-58, 113 S.Ct. 2063 (1993). The United States Court of Appeals for the Second Circuit recently explained that "[e]ven if breach of fiduciary duty is an equitable claim, therefore, remedies for breach of that fiduciary duty do not constitute "equitable relief" under section 502(a)(3) unless the plaintiff seeks a 'categor[y] of relief that [was] typically available in equity.' " Coan v. Kaufman, 457 F.3d 250, 264 (2d Cir. 2006) (alterations in original) (quoting Mertens, 508 U.S. at 256, 113 S.Ct. 2063).

In Great-West Life & Annuity Ins. Co. v. Knudson the Court noted that an accounting for profits is a recognized form of equitable restitution: "If, for example, a plaintiff is entitled to a constructive trust on particular property held by the defendant, he may also recover profits produced by the defendant's use of that property, even if he cannot identify a particular res containing the profits sought to be recovered." 534 U.S. at 214, n. 2, 122 S.Ct. 708 (2002). Here, even assuming that the remedy Tyndall seeks can properly be characterized as an accounting for profits the Fund earned on his retroactive benefits,[9] there is no genuine

---

[9] Knudson casts serious doubt on whether interest on retroactive awards of benefits is a permissible form of equitable relief. See, e.g., Flint v. ABB, Inc., 337 F.3d 1326, 1331 (11th Cir. 2003) (noting that Knudson "raises the question whether 502(a)(3) ever allows an award of interest for delayed benefits or whether such a claim is an impermissible attempt to dress an essentially legal claim in the language of equity"); Mead v. Andersen, 309 F. Supp.2d 596, 599 (S.D.N.Y. 2004) (holding that under Knudson plaintiff's claim for interest payments on pension benefits allegedly withheld in violation of plan's fiduciary duty could not be classified as

issue of material fact that Tyndall is entitled to such a remedy.

In Dunnigan v. Metropolitan Life Ins. Co. the Second Circuit found that, unless justified by good cause, unreasonable delay in paying benefits to which a beneficiary is entitled could amount to a breach of fiduciary duty. 277 F.3d 223, 229-230 (2d Cir. 2002). However, where a beneficiary's own delay in appealing a benefits denial was the proximate cause of the delay in obtaining benefits, the delay is justified. See, e.g., Campanella v. Mason Tenders' District Council Pension Plan, 299 F. Supp.2d 274, 292 (S.D.N.Y. 2004) (holding that where beneficiaries waited three years after initial denial to re-initiate claims delay in granting benefits was justified), aff'd 132 Fed. Appx. 855, 857 (2d. Cir. 2005) (finding that interest was not warranted where delay in paying benefits "was not unreasonable or unjustified"); Fotta v. Trustees of United Mine Workers of America, 319 F.3d 612, 618 (3d Cir. 2003) ("One of the reasons for denying an equitable remedy is delay by the claimant.")

Tyndall waited over four years to appeal the 1990 denial of pension benefits. After the Trustees waived the terms of the Pension Plan and awarded Tyndall a pension, he waited another six years to request that his pension be made retroactive. There is no genuine issue of material fact that Tyndall's extensive delay in appealing the benefits denial and in requesting retroactive

---

equitable); but see Dobson v. Hartford Financial Servs., 196 F. Supp.2d 152, 170 -171 (D. Conn. 2002) (noting that, while using label "disgorgement of profits to prevent unjust enrichment . . . will not automatically convert a legal claim into one for equitable relief, the nature of the relief sought here, combined with the allegations of [breach of] fiduciary duty, ERISA regulations and the terms of the LTD Plan itself, convince the Court that this is an equitable claim for unjust enrichment rather than a legal claim for interest as compensatory relief."), rev'd on other grounds 389 F.3d 386, 395 (2d. Cir. 2004); Dunnigan v. Metropolitan Life Ins. Co., 214 F.R.D. 125, 134 (S.D.N.Y. 2003) ("The case at bar is a suit against a fiduciary to recover profits on property wrongfully held by the fiduciary, which the Supreme Court [in Knudson] specifically differentiated from an action to impose personal contractual liability on a plan beneficiary.").

benefits was the proximate cause of the delay in his receiving the benefits. While the Court recognizes that the misinformation the Fund provided to Tyndall may have discouraged him from pursuing his claim between 1990 and 1994, this is not enough to render the Fund's delay in paying benefits unreasonable.[10] Because the Trustees' delay in paying Tyndall's benefits was neither unreasonable nor unjustified, Tyndall is not entitled to an accounting of profits.

## IV.   Conclusion

Accordingly, Defendants' Supplemental Motion for Summary Judgment [Doc. #43] is GRANTED and the Plaintiff's Request for Summary Judgment [Doc # 54] is denied.

**SO ORDERED** this _27__th day of December 2006, at Hartford, Connecticut.

/s/ CFD
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**

---

[10] The Court notes that the July 1990 benefits denial letter informed Tyndall that he could appeal the Fund's ruling and that there were time limits for doing so.